UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM J. LOVELACE and<br>OCTAVIA LOVELACE<br>    Plaintiffs,<br><br>v.<br><br><br>SHOWROOM AUTO, LLC<br>    Defendant | NO. 16-CV-4978<br><br><br>JURY DEMANDED |

# COMPLAINT

## I. INTRODUCTION

1. This is a suit brought under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the New York General Business Law ("GBL") §§ 349 and 350.

## II. PARTIES

2. Plaintiff William J. Lovelace ("William") is a consumer and natural person residing in South Ozone Park, New York.

3. Plaintiff Octavia Lovelace ("Octavia") is a consumer and natural person residing in South Ozone Park, New York. She is William's daughter.

4. Defendant Showroom Auto is a New York corporation that operates an automobile dealership in Long Island City, New York.

## III. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

7. This court has jurisdiction over Showroom Auto because it is a New York entity that regularly conducts business in this state.

8. Venue in this court is proper because the claims involve a transaction that occurred in this district.

## IV. FACTUAL ALLEGATIONS

9. On or about April 7, 2016, Octavia saw an advertisement on Showroom Auto's website and www.usedcarsgroup.com for a 2014 Mercedes Benz C300 (the "Vehicle") for a price of $23,981.

10. After contacting Showroom Auto to confirm that the Vehicle was still available, Octavia and her father, William, travelled to the dealership and met with a Showroom Auto salesman.

11. Octavia discussed the Vehicle with Showroom Auto personnel, who confirmed that the cash price of the Vehicle was $23,981.

12. Octavia told Showroom Auto that she had $10,000 to put down for the purchase of the Vehicle.

13. Showroom Auto suggested to Octavia that the car be put in only William's name due to Octavia's credit, but Showroom Auto knew and understood that Octavia would be the primary driver and would be making payments for the Vehicle.

14. The salesman at Showroom Auto told Octavia that she did not get approved for financing, but William had been approved, and they would need to put an additional $1,000 down.

15. Octavia did not have an additional $1,000 at the time of purchase, and Showroom Auto agreed to accept the payment in two weeks, and provided Octavia with a form to sign that permitted Showroom Auto to take the additional $1,000 from Octavia's bank account in two weeks.

16. Showroom Auto prepared a Retail Instalment Contract (the "Contract) that listed William as the Buyer and did not contain a Co-Buyer, even though it knew that Octavia would be making the payments under the Contract.

17. The Contract listed a cash price of $33,180.00, including $2,704 in sales tax, an amount that was substantially in excess of the advertised price.

18. Upon information and belief, Showroom Auto increased the price of the Vehicle because Exeter Financial is a subprime finance company that imposed costs upon Showroom Auto in order to take assignment of the Contract or otherwise did not pay the full amount financed at the time of assignment.

19. The Contract provided for an amount financed of $22,620, an annual percentage rate of 16.70%, a total finance charge of $15,462.96, and provided for 72 monthly payments of $528.93 commencing May 22, 2016.

20. The Contract was assigned to Exeter Finance Corp. ("Exeter").

21. Showroom Auto rushed William through the signing of the Contract, and he did not notice that the price being charged was substantially in excess of the agreed upon price and that the amount financed was $22,620.

22. Showroom Auto failed to provide Octavia or William with a copy of a Buyers Order for the Vehicle.

23. After receiving the first Exeter invoice and learning that the balance owed was $22,620, Octavia contacted Showroom Auto's general manager, Chris, who claimed that the price included a service contract and an "extended warranty" and a fee for "reconditioning" the Vehicle, although no reconditioning fee had been disclosed by Showroom Auto and no warranty agreement or service contract had been itemized on the Contract or provided to the Plaintiffs.

24. If a service contract was registered in this transaction, this occurred without Plaintiffs' knowledge, and no service contract has been provided them.

## V. CAUSES OF ACTION

### A. TRUTH IN LENDING ACT

25. Plaintiffs restate, reallege, and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

26. Showroom Auto violated TILA by increasing the purchase price of the Vehicle on account of William's credit and by charging him more money than he would have in a cash transaction.

27. Additionally, if a service contract was included, Showroom Auto violated TILA by not separately itemizing the cost of the service contract within the itemization of the amount financed that it provided to William.

28. Alternatively, if a service contract was included, Showroom Auto violated TILA by requiring William to charging him the cost of that undelivered contract as a condition of financing.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant Showroom Auto for actual damages, plus additional damages of $2,000 plus, attorney fees and costs.

### B. NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350

29. Plaintiffs restate, reallege, and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

30. Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

31. Under GBL § 350, "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service is hereby declared unlawful."

32. Showroom Auto's failure or refusal to sell the Vehicle for its advertised price is a violation of the GBL §§ 349 and 350, and it has caused Plaintiffs to suffer an ascertainable loss of money or property in that they paid more for the Vehicle, and became indebted to a greater extent, than if they had been charged only the advertised price.

33. Additionally, William signed the Contract and agreed to be liable for the payments for Octavia's Vehicle without compensation, and he is a "Co-Signor" within the meaning of the Federal Trade Commission's Credit Practices Rule, 6 C.F.R. § 444.3.

34. Showroom Auto violated the GBL when it obligated William without first informing him of the nature of his liability as co-signor, in violation of C.F.R. § 444.3(a)(2).

35. Showroom Auto violated the GBL when it did not provide William with a copy of the Notice to Co-Signor required by 16 C.F.R. § 444.3(c).

36. Showroom Auto further violated the New York General Business Law ("GBL") § 349 by failing to provide Plaintiff with the Buyers Order, Buyer's Guide and other contract documents for at the time he signed the Contract.

37. By and through its acts, omissions, concealments, and misrepresentations, Defendant violated GBL §§ 349 and 350 with false and deceptive advertising and with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and did so knowingly or willfully.

38. Plaintiffs relied upon the false and deceptive advertising.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant Showroom Auto for their damages, for civil penalties, for punitive damages, and for treble damages of up to $1,000, and attorney fees and costs.

### C. COMMON LAW FRAUD

39. Plaintiffs restate, reallege, and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

40. Showroom Auto's agents intentionally, recklessly and/or negligently made misrepresentations to Plaintiffs regarding the price of the Vehicle and the amount they would be financing to purchase the Vehicle.

41. Showroom Auto's agents negligently, willfully, intentionally and/or recklessly concealed from the Plaintiffs the fact that the Vehicle was going to be considerably costlier to them than was represented, and that it had created a contract containing more expensive terms than had been agreed to.

42. Showroom Auto then assigned the contract with an inflated price to Exeter and, based upon that assignment, arranged with the New York Department of Motor Vehicles to issue a title that reflected a lien in favor of Exeter.

43. That in reliance on Showroom Auto's false representations as set forth in the foregoing paragraphs, Plaintiff William Lovelace entered into a financing contract with Showroom Auto.

44. Without Showroom Auto's false representations, Plaintiff William Lovelace would not have entered into the financing contract with Showroom Auto.

45. Plaintiff William Lovelace has been actually damaged by Showroom Auto's false representations by receiving an automobile loan at a higher price for the Vehicle and amount financed than what William and Octavia Lovelace agreed to in negotiating the Contract.

46. Plaintiff William Lovelace has also been actually damaged by Showroom Auto's assignment of the contract to Exeter and by causing a lien with a grossly inflated price to be placed in Exeter's name.

47. Plaintiff William Lovelace relied on Showroom Auto's misrepresentations and were induced to purchase the aforementioned automobile.

48. Plaintiff Octavia Lovelace was also damaged by these false representations, because – as Defendant was aware – William Lovelace was buying the Vehicle in his name at Defendant's suggestion and Octavia Lovelace is responsible for making the monthly payments on his behalf.

49. As a result of the aforementioned conduct, Plaintiffs suffered damages.

50. Showroom Auto's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against Showroom Auto as follows:

(A) Actual damages;

(B) Punitive damages;

(C) Attorney fees, litigation expenses, and costs incurred in bringing this action; and

(D) Any other relief this Court deems appropriate and just under the circumstances.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury.

Dated: September 7, 2016

                                          PLAINTIFFS, WILLIAM J. LOVELACE
                                          And OCTAVIA LOVELACE


                                 By: /s/ *Brian L. Bromberg*
                                         Brian L. Bromberg
                                         One of Plaintiffs' Attorneys


**Attorneys for Plaintiff**

Daniel S. Blinn
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel: (860) 571-0408

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906