# Exhibit 5

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| WILLIAM J. LOVELACE and | : | |
| OCTAVIA LOVELACE | : | |
| Plaintiffs, | : | Case No.: 01-17-0006-3311 |
| | : | |
| v. | : | |
| | : | August 24, 2018 |
| | : | |
| SHOWROOM AUTO, LLC | : | |
| Defendant | : | |
| | : | |

## CLAIMANTS' POST-HEARING SUBMISSION

## INTRODUCTION

During the course of the hearing, Showroom Auto's sole representative, Bernard Chris Mercus ("Mercus") admitted that Showroom Auto had included as part of the "amount financed" a "Dealer Financing Fee" of $1,340. He also admitted that this was a charge added to the vehicle's price because the Claimants financed the sale. He also admitted that this charge would not have been imposed I a cash purchase. Consequently, this charge should have been included as part of the finance charge, and it should have been utilized in calculating the annual percentage rate of interest.

As shown below, this admission necessitates a finding that Showroom Auto violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. As a consequence, William Lovelace is entitled to $2,000 in statutory damages (in addition to whatever actual damages the arbitrator may find he has proved). Additionally, he is entitled to an award of a reasonable attorney's fee. For the reasons set forth below. Claimants seek a fee award of $27,000.

1

**FACTUAL BASIS FOR ENTITLEMENT TO ATTORNEY'S FEES**[1]

 Mercus freely admitted at the hearing that a significant portion of the increase from the advertised price of the vehicle was the "Dealer Financing Fee" of $1,340. This testimony was consistent with the contents of his sworn Affidavit submitted in connection with its Motion to Dismiss filed in the United States District Court (Claimants Exhibit 1).  In paragraph 20 (Page 8) of that statement, Mercus avers:

> The money aspect of ths transaction ended up as follows:
>
> | | |
> |---|---|
> | Base Vehicle price | 23,891.00 |
> | Used Vehicle Recon Fee and Prep | 2,995.00 |
> | **Dealer financing fee** | **1,340.00** |
> | Vehicle Price With Fees & Options | 30,476.00 |

(Emphasis supplied). When asked to explain the basis for this fee, Mercus acknowledged that one factor was the discount fee that was charged by creditors for consumers such as the claimants who do not have good credit. He also acknowledged that Exeter charged a fee of $583.59 to Showroom to accept the assignment of this contract. Mercus also emphasized the  work involved in arranging  financing.

 It is beyond reasonable dispute that this $1,340 charge would not have been imposed in a cash transaction; Mercus acknowledged this in his testimony. However, the Truth in Lending disclosures contained in the retail installment contract (Exhibit 5), reveal that this charge was buried in the cash price and included in the itemization of the amount financed. As shown below, this is a violation, because TILA requires that the charge be included as part of the finance charge.

---

[1] Claimants asserted additional theories under TILA. For purposes of this post-hearing submission, they are focusing on the one violation to which Showroom has admitted, because only one recovery can be had under TILA.

## TILA'S DEFINITION OF FINANCE CHARGE

Reg. Z addresses the burying of a "finance charge" as part of the "cash price" by its definition of these terms. Cash price is defined as:

> The price at which a creditor, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction. At the creditor's option, the term may include the price of accessories, services related to the sale, service contracts and taxes and fees for license, title, and registration.  The term does not include any finance charge.

"Finance charge" is defined broadly in Reg. Z to include both direct and indirect amounts paid as an incident to or a condition of the extension of credit.  Reg. Z, § 226.4(a), provides as follows:

> The finance charge is the cost of consumer credit as a dollar amount.  It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit.  It does not include any charge of a type payable in a comparable cash transaction.

The regulatory scheme requires sellers to separate the cash price of goods sold on credit from charges that are imposed as an incident of the extension of credit and that are not charged in a comparable cash transaction; those charges must be disclosed as finance charges.

This $1,340 charge would not have been incurred in a cash transaction, and it was therefore incidental to the extension of credit. By burying the charge in the cash price rather than including it in the finance charge, Showroom has violated 15 U.S.C. § 1638(a)(3) and (a)(4). This entitles William Lovelace to the remedy provided in 15 U.S.C. § 1640.

3

**THE CONSEQUENCES OF THE TILA VIOLATION**

The remedy for this TILA violation are specified at 15 U.S.C. § 1640(a). William Lovejoy is entitled to any actual damages proven pursuant to § 1640(a)(1). The actual damages claimed are set forth in Exhibit 9, the Damages Summary.

Additionally, he is entitled, as a matter of law, to double the finance charge, subject to a cap of $2,000, pursuant to § 1640(a)(2)(A). The finance charge in the retail installment contract is $15,462.96, so the $2,000 cap applies. The wording of the statute is mandatory (any creditor "is liable for . . . "). Showroom had stipulated that it is a creditor for purposes of TILA, and it is therefore liable for $2,000 plus any actual damages.

Showroom is also liable for attorney's fees. While the amount of the fees is to be determined by the arbitrator in accordance with well-established case law to be discussed below, the question of whether to award fees is not discretionary. Fees under TILA are mandatory[2]

Because the federal and state governments lack the resources to adequately police the marketplace and to protect consumers, federal and state consumer protection laws depend upon the private enforcement by aggrieved consumers.[3] The ability of consumers to bring such cases depends upon the availability of private attorneys willing

---

[2] *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5, 98 S.Ct. 694, 54 L.Ed. 2d 648 (1978) (Title VII); *see also Diaz v. Paragon Motors of Woodside, Inc.*, No. CV-03-6466 CPS RML, 2007 WL 2903920, at *7 (E.D.N.Y. Oct. 1, 2007) *citing Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 188 (4th Cir. 2007).

[3] *Diaz*, supra at *7 *citing Nigh v. Koons Buick Pontiac GMC, Inc.*, 384 F.Supp.2d 915, 919 (E.D.Va.2005); *see also de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 233 (1st Cir.1990)), aff'd in part and vacated in part, 458 F.3d 183 (4th Cir.2007);  *New Century Mortgage Corp. v. Payton*, 2004 WL 524693, at *1 (N.D.Ill. March 11, 2004) ("In enacting the Truth in Lending Act, Congress contemplated that the statute would be enforced by private litigants acting as private attorneys general") (internal quotation marks and citations omitted).

to bring these cases against well-heeled businesses. Accordingly, TILA provides that successful litigants are entitled to recover a reasonable attorney's fee based upon the work performed in the case, not based upon the amount recovered.[4] The availability of such fees enables private attorneys to handle cases that involve small dollar amounts, but which raise complex legal issues. Since businesses can avoid court proceedings by inserting pre-dispute arbitration clauses in their contracts, it is particularly important that arbitrators enforce these fee provisions. Otherwise, there will be no check on businesses that shirk their warranty obligations and violate consumer protection laws. The technical and complex issues presented in this and similar matters are abstruse and would severely disadvantage consumers if they were forced to proceed in these arbitrations *pro se* against represented businesses.

An award of attorney's fees is available to Claimants even if they do not prevail on every issue raised, because all the claims arise from the same transaction and conduct, i.e., Showroom Auto's overcharging for the Vehicle and failing to properly disclose and itemize the nature of the charges.[5] Reasonable attorney fees are also available to a prevailing plaintiff under GBL § 349(h).

---

[4] *Purtle v. Eldridge Auto **Sales**, Inc.,* 91 F.3d 797, 802 (6th Cir.1996) (Under TILA "[t]he attorney's fees are not limited by the amount of [plaintiff's] recovery"), *cert. denied,* 520 U.S. 1252, 117 S.Ct. 2411, 138 L.Ed.2d 177 (1997).
[5] *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) (Attorney's fees available when claims intertwined); *Dominic v. Consolidated Edison Co*., 822 F.2d 1249, 1259-60 (2d Cir. 1987) (fully compensatory fee proper where factual basis and legal theories same throughout); *United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989) (common core of facts and law).

## ATTORNEY'S FEES MUST BE BASED UPON THE WORK REASONABLY PERFORMED BY COUNSEL

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*[6] the Second Circuit clarified the proper analysis in exercising its considerable discretion in awarding attorney's fees.  A court (or, in this case, arbitrator) is to:

> bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*[7] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.[8]

The *Johnson* factors referenced in *Arbor Hill* are as follows:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the undesirability of the case;

---

[6] 493 F.3d 110 (2d Cir. N.Y. 2007)
[7] *Johnson v. Georgia Highway Exp., Inc.* 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds by *Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939 (1989).
[8] *Id.* at 117-118

(11) the nature and length of the professional relationship with the client; and,

(12) awards in similar cases.[9]

Although one of the *Johnson* factors is the "amount involved and the results obtained," courts have uniformly rejected "proportionality" as a factor in setting fees in consumer fee-shifting cases. In *Drouin v. Fleetwood Enterprises*, 163 Cal. App.3d 486, 492-93, 209 Cal. Rptr. 623 (Cal. App. 1985), a case involving the purchase of a motor home, the court rejected the defendant's argument that "the amount of attorneys fees awarded [by the trial court] was excessive when compared to plaintiff's recovery." The Court of Appeals quoted the legislative history the Magnson- Moss Warranty Act, another consumer fee-shifting statute, and affirmed an unspecified award of attorneys' fees. *See also Universal Motors, Inc. v. Waldock*, 719 P.2d 254, 260 (Alaska 1986)($45,175.80 award of attorneys' fees, rejecting contention that "an attorney's fees award which dwarfs the judgment is inappropriate."). Similarly, in *Jordan v. Transnational Motors,* 212 Mich. App. 94, 537 N.W.2d 471 (Mich. Ct. App. 1995), the Michigan Court of Appeals reversed a trial court that awarded fees substantially less than the value of the time expended, holding:

> In consumer protection [litigation] as this, the monetary value of the case is typically low.  If courts focus only on the dollar value and the results of the case when awarding attorneys' fees, the remedial purpose of the statutes in question will be thwarted.  Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients.  Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved.  Such a situation would be ironic: it is precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended.

*Id.* at 98-99.

---

[9] *Johnson,* at 717-719.

The logic of the Michigan Court of Appeals applies equally to this case. Showroom violated the Truth in Lending Act. The purpose of the fee-shifting provision is to enable consumers such as the Claimants to secure competent counsel. If these statutes are to be effective in preventing car dealer misconduct such as that revealed in these proceedings, then it is necessary that consumers be awarded reasonable fees.

"[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (awarding $5,500,000 in fees on $3 recovery). In a consumer protection case such as this one, the damages are often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." *Postow v. Oriental Bldg Ass'n*, 455 F. Supp. 781, 791 (D.D.C. 1978). See also *Bittner v. Tri-County Toyota*, 58 Ohio St. 3d 143, 144, 569 N.E.2d 464, 466 (1991) (the remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount cases cannot fully compensate the attorneys who take them on); *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 220 (D. NJ 1999) (rejecting proportionality in awarding $58,000 in fees in Fair Debt Collection Practices Act case).

Additionally, the fees should not be reduced because Claimants may not prevail on every issue raised in the arbitration. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court ruled that a fee request can be reduced only where the plaintiff presented "distinctly different claims for relief that are based on different facts and legal theories." *Id.* at 434.  The Court held:

the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . .Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

*Id.* at 440. *See also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) (claims intertwined); *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1259-60 (2d Cir. 1987) (fully compensatory fee proper where factual basis and legal theories same throughout); *United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989) (common core of facts and law).

In this case, all of the claims are related to the same dealership practice – the advertising of an advantageous price to lure a vulnerable consumer who is then charged a higher price. While the parties offered differing versions of whether certain charges were voluntarily incurred, the recorded phone conversations revealed the duplicity of Mr. Mercus, who was not able to provide any support for his position that the "reconditioning fee" was voluntary or that it included a warranty. Indeed, during his taped conversations, Mr. Mercus acknowledged that the charge was mandatory, and he falsely claimed that it was for a third party service contract.

Since all of these claims are interrelated and pertain to a common core of facts and law, there should not be any reduction to the fees on account of any of the arguments or claims asserted by the Claimants on which they did not prevail. As shown above, **the law requires that an award issue under TILA.**  And, the mandatory fees should be based upon the time spent in connection with all of the claims.

## **CLAIMANTS SEEK A REASONABLE FEE OF $27,000**

The accompanying Declarations of Daniel S. Blinn and Brian Bromberg provide a general description of the work performed, the time expended and the hourly rates. Plaintiff seeks a reasonable fee of $27,000.

The fees are based upon hourly rates of $400 for Daniel S. Blinn, $275 for his associate, Brendan L. Mahoney, $400 for co-counsel Brian Bromberg, $150 for paralegal, Lori Miner, and $95 for legal assistant Dora Fernandez.

Attorney Blinn has practiced law for more than 30 years, and he has focused his practice on consumer protection matters for more than 20 years.  He has handled more than 1,000 cases involving car dealerships during that time.  He is a former and the current chair of the Consumer Law Section of the Connecticut Bar.  Attorney Blinn has served on the national board of directors of the National Association of Consumer Advocates ("NACA"), and he served for five years as the Treasurer of that organization. He has also served as the chair of NACA's Connecticut chapter for more than eight years.

He is also a regular presenter at conferences run by NACA, the National Consumer Law Center, and the Connecticut Bar Association.  He is nationally recognized for his work in handling auto dealer fraud cases, having recently served as one of the co-chairs of the 2018 Auto Dealer Fraud Conference held by NACA in May 2018. In ruling on another attorney's fee application, United States Magistrate Judge Thomas P. Smith referred to him as one of the two "preeminent consumer law attorneys", practicing in the District of Connecticut.  See *Negron v. Mallon Chevrolet*,

Order on Plaintiff's Motion for Attorney's Fees, September 24, 2012, No. 3:08-cv-00182-TPS (D. Conn. 2012).

The claimed hourly rate of $400/hour has been approved in multiple decisions by federal and state court judges.  Consequently, the undersigned's hourly rates and the rates of his staff have been approved in numerous court decisions, many of which have involved claims against auto dealers.  *E.g., Bristol v. Lake Pocotopaug Auto, LLC*, No. 3:13cv911JBA (D. Conn. Jun. 27, 2014) (found the hourly rates and hours claimed to be reasonably billed by a "well respected consumer attorney and firm"); *Franco v. A Better Way Wholesale Autos, Inc.,* No. 3:14cv422 VLB (D. Conn. May 31, 2016); *Linsley v. FMS Investment Corp.*, No. 3:11cv00961VLB (D. Conn. June 2, 2014); *Wise v. Cavalry Portfolio Services,* LLC, No. 3:09-cv-00086CSH (D. Conn. Sept. 23, 2013); *Woods, et al v. Prime Auto Group*, LLC, No. 3:13cv161RNC (D. Conn. Mar. 21, 2014.

Attorney Brendan Mahoney has been admitted to the practice of law for three years and has no disciplinary record. His claimed hourly rate of $275 is well within the standards for lawyers of his experience.

Attorney Brian Bromberg served as co-counsel on this matter at the onset. Attorney Bromberg has served as co-counsel with Attorney Blinn on a number of cases, and he is similarly a nationally recognized consumer rights lawyer. Although his standard hourly rate is considerably higher, he has voluntarily reduced it to $400/hour due to his reduced and more limited role.

Claimants acknowledge that there is considerable time included in the fee request for time spent litigating the matter in the United States District Court. There was, however, a legitimate basis for the parties to pursue their claims in court

11

notwithstanding the inclusion of an arbitration clause. Claimants include a copy of the Memorandum of Law in opposition to the motion to dismiss filed by Showroom. As shown in that motion, there were numerous contract provisions that had conflicting venue selection clauses. Moreover, Ms. Lovelace was not herself party to any agreement to arbitrate. Claimants were ultimately successful in defeating the motion to dismiss the case on the merits.

Finally, Claimants note that they have made a very considerable voluntary discount (approximately one-third) to the attorney's fee claim. This is made, in part, because of a desire to avoid any duplicate billings for having two lawyers involved in the case.

For the foregoing reasons, Claimants submit that $27,000 is a fair and reasonable attorney's fee in light of Showroom's admitted violations of TILA.

Dated:        August 24, 2018

                                      PLAINTIFFS, WILLIAM J. LOVELACE
                                      And OCTAVIA LOVELACE

                                      By: /s/ *Daniel S. Blinn*
                                              Daniel S. Blinn
                                              One of Plaintiffs' Attorneys

                                      By: /s/ Brian Bromberg
                                              Brian Bromberg
                                              One of Plaintiffs' Attorneys

**Attorneys for Plaintiff**

Daniel S. Blinn
Brendan L. Mahoney
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel: (860) 571-0408

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| WILLIAM J. LOVELACE and | : | Case No.: 01-17-0006-3311 |
| OCTAVIA LOVELACE | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| SHOWROOM AUTO, LLC | : | AUGUST 24, 2018 |
|     Defendant | : | |

<u>DECLARATION OF DANIEL S BLINN</u>

The undersigned hereby declares under penalty of perjury that:

1.      I am over eighteen years of age, and I believe in the obligations of an oath.

2.      I am the founder and Managing Attorney of Consumer Law Group, LLC ("CLG"), a private law firm established on September 1, 1997, that focuses its practice upon representing consumers against car dealerships that have violated consumer protection laws.

3.      Since founding CLG, I have focused on consumer protection matters and, in particular, claims involving auto dealer fraud and financing.

4.      I have handled more than 1,200 auto dealer claims.

5.      I served as co-chair for the 2018 Auto Dealer Fraud Conference

sponsored by the National Association of Consumer Advocates in May 2018.

6.      I am a former and the current chair of the Consumer Law Section of the Connecticut Bar Association. I am also a former director and Treasurer of the National Association of Consumer Advocates.

7.      I am a regular presenter of continuing legal education programs for the National Association of Consumer Advocates, the National Consumer Law Center, and the Connecticut Bar Association.

8.      Along with my co-counsel Brian Bromberg, I have had primary responsibility for this file from its inception, and all work performed on this case has been performed by me or was under my direct and close supervision.

9.      It is CLG's practice for all personnel to make contemporaneous records of work performed on client matters, including the amount of time required and a description of the work.  These entries are then entered into the firm's computer billing program.

10.      The billing rate for my work described in this affidavit is $400 per hour. The billing rate for my associate Brendan L. Mahoney is $275 per hour.  The billing rate for my paralegal Lori Miner in preparing the complaint is $150 per hour. The billing rate for my legal assistant Dora Fernandez is $95 per hour.

11.     I believe that CLG's billing rates are consistent with those charged by other Connecticut firms having comparable levels of experience and expertise, and CLG's current rates have been approved in prior fee applications by both state and federal courts.  *E.g., Bristol v. Lake Pocotopaug Auto, LLC*, No. 3:13cv911JBA (D. Conn. Jun. 27, 2014)(found the hourly rates and hours claimed to be reasonably billed by a "well respected consumer attorney and firm"); *Linsley v. FMS Investment Corp.*, No. 3:11cv00961VLB (D. Conn. June 2, 2014); *Wise v. Cavalry Portfolio Services, LLC*, No. 3:09-cv-00086CSH (D. Conn. Sept. 23, 2013); *Woods, et al v. Prime Auto Group, LLC*, No. 3:13cv161RNC (D. Conn. Mar. 21, 2014); *Cuff, et al v. Connex Credit Union, Inc.*, No. (X07) HHD-CV-11-6027756-S (Conn. Super Ct. Nov. 26, 2013.).  All of these cases involved claims at the current hourly rates, which have not been increased for nearly five years.

12.     I attach to this Declaration an itemization of the work performed in this matter (Exhibit A), the individual performing the work, the amount of time spent, and the dollar amount sought for that work.

13.     I am listed in this itemization as "DSB", Attorney Mahoney is "BLM", Lori Miner is "LM" and Dora Fernandez is "DF".

14.     I have reviewed each of the entries and have marked off as "No Charge"

for the entries administrative or secretarial in nature

15.     The report also lists expenses incurred in handling this aspect of the case, and the total value of those expenses.

16.     I have also reviewed the time entries of my co-counsel Brian Bromberg.

17.     Attorney Bromberg and I have discussed an appropriate adjustment to the billings in order to avoid any duplication of efforts.

18.     It is my considered opinion that an attorney's fee award of $27,000 is fair and reasonable for the work performed in the handling of this claim.

/s/ *Daniel S. Blinn*
Daniel S. Blinn

4

EXHIBIT A

| Date: | 8/23/2018 | **Pre-Bill Worksheet** |
|---|---|---|
| User: | DB | |

---

Bill To: **Lovelace, William & Octavia v. Showroom Auto - 011700063311**

Octavia Lovelace
133-14 142nd Street, 2nd Floor
South Ozone, NY 11436

Billing Cycle:
| Status | Active |
|---|---|
| Instructions | |
| Fee Arrangement: | Standard - First Bill |
| Exp Arrangement: | Standard |

Billing Actions

| Last Bill Date: | n/a |
|---|---|
| Last Payment Date | n/a |

**Fees**

| Date / Staff | Bill Code / Description | Rate Markup % | Hours DNB Hours | No Chg | Amount | Status | Adj Val | Billed Val |
|---|---|---|---|---|---|---|---|---|
| 7/01/2016 DSB | review Lovelace matter w/ Brian Bromberg; review docs and recordings | $400.00 | 0.50 | 0.00 | $200.00 | Billable | $200.00 | $200.00 |
| 7/07/2016 DSB | telephone conf w/ clients - Octavia and Will Lovelace | $400.00 | 1.00 | 0.00 | $400.00 | Billable | $400.00 | $400.00 |
| 8/23/2016 DSB | conf w/ LM re preparation of complaint | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 8/25/2016 LM | Draft Complaint. | $150.00 | 2.40 | 0.00 | $360.00 | Billable | $360.00 | $360.00 |
| 8/26/2016 DSB | revise draft complaint (including review of recordings) | $400.00 | 1.00 | 0.00 | $400.00 | Billable | $400.00 | $400.00 |
| 9/07/2016 DSB | review and comment on revised draft complaint | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 9/27/2016 DSB | tc w/ Brian B. re misc case issues and status | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 10/18/2016 LM | Review case docket re: status (.1); prepare appearance of DSB (.1). | $150.00 | 0.20 | 0.00 | $30.00 | Billable | $30.00 | $30.00 |
| 12/19/2016 LM | Begin draft of motion (.2) and MOL (1.1) for default judgment. | $150.00 | 1.30 | 0.00 | $195.00 | Billable | $195.00 | $195.00 |
| 12/23/2016 LM | Research Gen Bus Law and continue drafting MOL re: default judgment (1.7). | $150.00 | 1.70 | 0.00 | $255.00 | Billable | $255.00 | $255.00 |
| 12/28/2016 DSB | review draft memo of law in support of judgment prepared | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |

1

**Pre-Bill Worksheet**

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  | by Lori Miner and forward to Brian Bromberg w/ comments |  |  |  |  |  |  |  |
| 1/06/2017 DSB | review revised motion for judgment | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 1/06/2017 LM | tel call to (voicemail MSG) Atty Bromberg re: need for client affidavit in support of motion for judgment | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 1/09/2017 DSB | conf w/ Brian B re default motion | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 1/09/2017 LM | Draft DSB declaration re: fees. | $150.00 | 0.20 | 0.00 | $30.00 | Billable | $30.00 | $30.00 |
| 1/12/2017 DSB | revise and finalize declaration | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 1/31/2017 DSB | review declaration of opposing counsel and conf w/ Brian Bromberg re response to motion to open default and arb issues | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 2/02/2017 DSB | conf w/ Brian Bromberg re motion to open default and evidence of false statements therein | $400.00 | 0.30 | 0.00 | $120.00 | Billable | $120.00 | $120.00 |
| 2/06/2017 DSB | review draft letter to Court and revise same; draft suggested cover letter to send advance copy to Atty Pollack | $400.00 | 0.30 | 0.00 | $120.00 | Billable | $120.00 | $120.00 |
| 2/07/2017 DSB | review and comment on misc letter motion submissions | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 2/10/2017 DSB | evaluate discovery requirements and instructions to LM to prepare drafts | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 2/10/2017 DSB | conf w/ Brian Bromberg re arbitration issues; instructions to LM re preparing arbitration demand | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 2/13/2017 LM | Prepare arbitration demand. | $150.00 | 0.50 | 0.00 | $75.00 | Billable | $75.00 | $75.00 |
| 2/14/2017 LM | Edit arbitration demand and email to Brian Bromberg | $150.00 | 0.20 | 0.00 | $30.00 | Billable | $30.00 | $30.00 |
| 2/21/2017 DSB | conf w/ Brian Bromberg re upcoming settlement conf | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 2/22/2017 DSB | tc w/ Brian Bromberg re Showroom Auto's affidavit and claims re pricing of vehicle | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |

# Pre-Bill Worksheet

| Date | | Description | Rate | Hours | | Amount | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2/22/2017 | DSB | draft letter confirming arbitration of claims | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 3/07/2017 | DSB | preparation of memo opposing motion to dismiss | $400.00 | 6.00 | 0.00 | $2,400.00 | Billable | $2,400.00 | $2,400.00 |
| 3/10/2017 | DSB | continued work on memo opposing motion to dismiss, including research on forum non conveniens | $400.00 | 2.30 | 0.00 | $920.00 | Billable | $920.00 | $920.00 |
| 3/13/2017 | DSB | tc w/ Brian Bromberg re misc issues re motion to dismiss | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 3/13/2017 | DSB | continued work on memo opposing motion to dismiss | $400.00 | 2.00 | 0.00 | $800.00 | Billable | $800.00 | $800.00 |
| 3/18/2017 | DSB | continued research and prep of MOL opposing motion to dismiss | $400.00 | 3.00 | 0.00 | $1,200.00 | Billable | $1,200.00 | $1,200.00 |
| 3/19/2017 | DSB | continued research and prep of MOL opposing motion to dismiss | $400.00 | 3.50 | 0.00 | $1,400.00 | Billable | $1,400.00 | $1,400.00 |
| 3/20/2017 | DSB | continued editing of brief and forward to Brian Bromberg w/ comments | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 3/20/2017 | DSB | revise brief to incorporate EDNY decision re forum selection; instructions to LM re cite checks | $400.00 | 0.30 | 0.00 | $120.00 | Billable | $120.00 | $120.00 |
| 3/20/2017 | LM | Proofread/edit MOL. | $150.00 | 0.60 | 0.00 | $90.00 | Billable | $90.00 | $90.00 |
| 4/07/2017 | DSB | review letter brief and tc w/ Brian Bromberg re same | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 9/20/2017 | DSB | review recommended ruling | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 9/25/2017 | DSB | forward Brian Bromberg previously prepared arb demand w/ recommendation to file now | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 11/10/2017 | DSB | tc w/ opposing counsel re settlement offer | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 11/13/2017 | DSB | evaluate settlement value of case and email to Brian Bromberg re recommendation for response to offer | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 11/19/2017 | DSB | draft response to email suggesting mediation | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 12/22/2017 | LM | Email to AAA. requesting status | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |

## Pre-Bill Worksheet

| Date / Initials | Description | Rate | Hours | | Amount | Status | | |
|---|---|---|---|---|---|---|---|---|
| 12/29/2017 DSB | review order from AAA dismissing case and email to BB re recommended course | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 2/05/2018 LM | Review letter from AAA; calendar deadlines for answer and conflicts checklist | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 2/05/2018 LM | Draft conflicts checklist | $150.00 | 0.20 | 0.00 | $30.00 | Billable | $30.00 | $30.00 |
| 2/09/2018 LM | Conf w/DB re: potential witnesses and edit conflicts checklist, and email to Brian Bromberg (.1). | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 2/13/2018 LM | Edit conflicts checklist per request for Atty Bromberg | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 2/15/2018 LM | Email conflicts checklist to AAA. | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 2/26/2018 LM | tel call to Atty Bromberg re: status letter to court | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 3/01/2018 LM | Receive/review AAA. ltr re: appointment of arbitrator; calendar deadline to object | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 3/20/2018 DSB | respond to client inquiry re case status | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 3/21/2018 LM | Reply email to D. Coppola re: DB and BB's availability for a preliminary conference with arbitrator | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 3/21/2018 LM | tel call to (voicemail MSG) and email to Atty Bromberg re: availability for prel. conference with arbitrator | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 3/23/2018 LM | Reply to D. Coppola email re: availability for preliminary conference | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 4/16/2018 DSB | prepare for and participate in prehearing conf | $400.00 | 0.60 | 0.00 | $240.00 | Billable | $240.00 | $240.00 |
| 4/19/2018 DSB | tc w/ Steven Coren re document exchange and prepare email confirming agreements re same | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 5/07/2018 DSB | conf w/ LM | $400.00 | 0.00 | 0.00 | $0.00 | Billable | $0.00 | $0.00 |
| 5/08/2018 LM | Compile documents for production and prepare dropbox folder; email to DB & BB for final approval (.3); several tel call to Atty Coren | $150.00 | 0.40 | 0.00 | $60.00 | Billable | $60.00 | $60.00 |

**Pre-Bill Worksheet**

and email in f/u to his email of May 7 and to ask for documents that were not attached to email (.1).

| Date / Initials | Description | Rate | Hours | | Amount | Status | Amount | Amount |
|---|---|---|---|---|---|---|---|---|
| 5/10/2018 DSB | conf w/ LM re document production and finalizing same | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 5/10/2018 LM | Email to DB & BB with Showroom Auto documents | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 5/10/2018 LM | conf w/DB re: status of document production (.1); tel call to Atty Bromberg (voicemail MSG) | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 5/11/2018 LM | Produce claimants' documents via drop box to Attys Coren and Pollock. | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 5/15/2018 DSB | conf w/ Atty Bromberg re prehearing conf and voicemail not produced last week (.1); participate in prehearing conf (Atty Coren did not participate) (.2); telephone conf w/ Atty Bromberg re prep for hearing, allocate tasks for prehearing prehearing Memo of Law, and discussion of prep of audio recordings for presentation at hearing (.2) | $400.00 | 0.50 | 0.00 | $200.00 | Billable | $200.00 | $200.00 |
| 5/15/2018 LM | Receipt of email from AAA. re: deadlines for pre-hearing briefs; calendar deadline to file pre-hearing memo. | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 5/16/2018 BLM | conf w/ DSB on strategy for drafting Lovelace mol for arbitration | $275.00 | 0.10 | 0.00 | $27.50 | Billable | $27.50 | $27.50 |
| 5/25/2018 BLM | draft TILA section of memorandum | $275.00 | 1.70 | 0.00 | $467.50 | Billable | $467.50 | $467.50 |
| 6/05/2018 LM | tel call to Atty Coren (voicemail MSG) re: extension of briefing schedule in light of continuance of arbitration hearing | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 6/07/2018 LM | tel call to (voicemail MSG) Atty Coren re: extending briefing schedule | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 6/08/2018 LM | tel call to (voicemail MSG) Derek Coppola re: status of continuance & revising scheduling order | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |

**Pre-Bill Worksheet**

| Date/Initials | Description | Rate | Hours | | Amount | Status | | |
|---|---|---|---|---|---|---|---|---|
| 6/14/2018 LM | tel call to Derek Coppola | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 6/18/2018 LM | Email to Atty Bromberg re: response to American Arbitration Association of dates for evidentiary hearing | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 6/25/2018 BLM | edit prehearing memo | $275.00 | 0.20 | 0.00 | $55.00 | Billable | $55.00 | $55.00 |
| 6/29/2018 BLM | conf w/ DSB regarding prehearing, brief,  review 12 (b)(6) motion and documents for "itemization" of finance charge; edit brief | $275.00 | 0.50 | 0.00 | $137.50 | Billable | $137.50 | $137.50 |
| 6/29/2018 DSB | review and revise draft prehearing MOL; notes to file re tasks necessary to complete facts and TILA section (.4); conf w/ Brendan Mahoney re supplementing same (.2) | $400.00 | 0.40 | 0.00 | $160.00 | Billable | $160.00 | $160.00 |
| 7/02/2018 BLM | edit prehearing memo per DSB comments | $275.00 | 1.50 | 0.00 | $412.50 | Billable | $412.50 | $412.50 |
| 7/11/2018 LM | Receive/review court order and calendar court deadline to file next status report | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 7/13/2018 BLM | review emails from DSB and BB regarding NY law portion of prehearing brief | $275.00 | 0.10 | 0.00 | $27.50 | Billable | $27.50 | $27.50 |
| 7/13/2018 DSB | revise draft MOL and forward to Brian Bromberg | $400.00 | 0.40 | 0.00 | $160.00 | Billable | $160.00 | $160.00 |
| 7/26/2018 LM | tel call to Atty Brian Bromberg re: final version of brief, unreported cases to attach, and scheduling conference with client (.3); edit brief to include additional case and finalize (.9); email to AAA. and counsel. | $150.00 | 1.20 | 0.00 | $180.00 | Billable | $180.00 | $180.00 |
| 7/27/2018 DF | tel call to client & email re: prep. time appointment | | 0.10 | 0.10 | $0.00 | No Charge | $0.00 | $0.00 |
| 7/30/2018 DF | tel call to client re: scheduling date & time for arb. prep.; left voicemail | | 0.10 | 0.10 | $0.00 | No Charge | $0.00 | $0.00 |
| 8/06/2018 DSB | Prep for hearing  (review and annotate recordings and evaluate use for hearing (.9); review of docs and ascertain exhibits for direct and docs to | $400.00 | 1.90 | 0.00 | $760.00 | Billable | $760.00 | $760.00 |

6

**Pre-Bill Worksheet**

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  | review w/ clients for prep session (.5); review of docs in prep for cross and determine exhibits (.4); email to Brian Bromberg transmitting docs for prep session (.1) |  |  |  |  |  |  |  |
| 8/07/2018 DSB | tc w/ Brian Bromberg re hearing logistical issues and arranging for audio exhibits | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 8/08/2018 DSB | continued arbitration preparation, including preparation of hearing exhibits, preparation of outline for cross examination, and preparation of damages summary exhibit | $400.00 | 2.00 | 0.00 | $800.00 | Billable | $800.00 | $800.00 |
| 8/09/2018 DSB | Arbitration hearing, including 5 hours travel and one hour prep w/ clients pre-hearing | $400.00 | 10.00 | 0.00 | $4,000.00 | Billable | $4,000.00 | $4,000.00 |
| 8/13/2018 DSB | tc w/ Steve Coren re claimants' settlement position | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 8/16/2018 DSB | tc to  Steve Coren re dealer response to demand | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 8/17/2018 DSB | tc w/ Atty Coren re response to demand; email to Brian Bromberg re same | $400.00 | 0.10 | 0.00 | $40.00 | Billable | $40.00 | $40.00 |
| 8/20/2018 LM | Review court order re:status report and calendar court deadline for next due date for status report | $150.00 | 0.10 | 0.00 | $15.00 | Billable | $15.00 | $15.00 |
| 8/21/2018 LM | Prepare DSB declaration re: fees | $150.00 | 0.20 | 0.00 | $30.00 | Billable | $30.00 | $30.00 |
| 8/22/2018 DSB | continued work on fee request | $400.00 | 1.60 | 0.00 | $640.00 | Billable | $640.00 | $640.00 |
| 8/23/2018 DSB | organize exhibits for production to arbitrator; consideration of cases to forward | $400.00 | 0.20 | 0.00 | $80.00 | Billable | $80.00 | $80.00 |
| 8/23/2018 DSB | continued work on fee request and post-hearing submissions | $400.00 | 1.20 | 0.00 | $480.00 | Billable | $480.00 | $480.00 |
| Total | Billable Fees |  | 59.00 |  | $20,182.50 |  |  | $20,182.50 |

**Expenses**

| Date Staff | Bill Code Description | Price Markup % | Quantity | Amount | Status | Adj Value | Billed Val |
|---|---|---|---|---|---|---|---|
| 4/07/2017 DSB | $WEST Westlaw Research on 3/19/17 | $0.92 | 1.00 | $0.92 | Billable | $0.92 | $0.92 |

## Pre-Bill Worksheet

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/05/2018 BLM | $WEST Westlaw Research | $3.23 | 1.00 | $3.23 | Billable | $3.23 | $3.23 |
| 8/06/2018 DSB | $CPY Copies for trial notebook | $0.18 | 94.00 | $16.92 | Billable | $16.92 | $16.92 |
| 8/09/2018 BLM | $WEST Westlaw Research | $12.43 | 1.00 | $12.43 | Billable | $12.43 | $12.43 |
| 8/16/2018 DF | $CPY Arbitration Exhibits | $0.18 | 128.00 | $23.04 | Billable | $23.04 | $23.04 |
| Total | Billable Expenses | | | $56.54 | | | $56.54 |

**Pre-Bill Worksheet**

### Calculations of Fees and Expenses

Fees Arrangement: Standard - First Bill
Total of billable time records                           $20,182.50

Total Fees                                                                    $20,182.50

Expense Arrangement: Standard
Total of billable expense records                        $56.54

Total Expenses                                                                $56.54

Total New Charges                                                         $20,239.04

Total New Charges                                                         $20,239.04

Previous Balance                                                               $0.00
Total New Balance                                                        $20,239.04

Fund Activity for Client Funds
Balance                                                                        $0.00

**Staff Summary**

| Staff | Total Hours | Billable | Non-Billable | Rate | Amount |
|-------|-------------|----------|--------------|------|--------|
| BLM | 4.10 | 4.10 | 0.00 | $275.00 | $1,127.50 |
| DF | 0.00 | 0.00 | 0.00 | $0.00 | $0.00 |
| DSB | 43.40 | 43.40 | 0.00 | $400.00 | $17,360.00 |
| LM | 11.30 | 11.30 | 0.00 | $150.00 | $1,695.00 |

**Phase Summary**

| Code | Hours | Rate | Fees | Expenses | Total |
|------|-------|------|------|----------|-------|
| (None) | 59.00 | 400.00 | $20,182.50 | $56.54 | $20,239.04 |

9

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| WILLIAM J. LOVELACE and | : | |
| OCTAVIA LOVELACE | : | |
| Plaintiffs, | : | Case No.: 01-17-0006-3311 |
| | : | |
| v. | : | |
| | : | August 24, 2018 |
| | : | |
| SHOWROOM AUTO, LLC | : | |
| Defendant | : | |
| | : | |

**Declaration of Brian L. Bromberg in Support of
Plaintiffs' Motion for Attorney Fees and Costs**

Under 28 U.S.C. § 1746, I, Brian L. Bromberg, do hereby declare under

penalty of perjury, that the following is true and correct:

1.     I am a principal of the Bromberg Law Office, P.C.

2.     I am submitting this Declaration in support of request for an award of

attorney fees, costs, and expenses incurred in litigating this matter.

3.     My rate on this matter is $400 an hour.

4.     As explained below, I have been awarded higher rates on a number of

cases.

5.     The credentials and court decisions upon which I base my hourly rate

are as follows:

6.     I graduated from Oberlin College with a B.A. in Philosophy in 1987.

7.     I earned my J.D. from Brooklyn Law School in 1991.

1

8.      I am a member in good standing of the bars of the following state

courts:

> New York State Bar (Appellate Division, Second Department)
> March 4, 1992
>
> California Bar
> July 17, 2006
>
> New Jersey Bar
> June 19, 2017

7.      I am a member in good standing of the following federal courts:

> U.S. District Court for the Southern District of New York
> May 19, 1992
>
> U.S. District Court for the Eastern District of New York
> June 10, 1992
>
> United States Court of Appeals for the Second Circuit
> January 10, 2002
>
> Supreme Court of the United States
> August 4, 2003
>
> U.S. District Court for the Northern District of Illinois
> August 15, 2003
>
> United States Court of Appeals for the Seventh Circuit
> May 13, 2004
>
> U.S. District Court for the Western District of New York
> December 6, 2004
>
> U.S. District Court for the Northern District of New York
> January 4, 2005
>
> U.S. District Court for the Northern District of Indiana
> August 30, 2005
>
> U.S. District Court for the District of Connecticut
> March 3, 2006

U.S. District Court for the Northern District of California
August 7, 2006

U.S. District Court for the Central District of California
August 10, 2006

U.S. District Court for the Southern District of California
August 24, 2006

U.S. District Court for the Eastern District of California
August 29, 2006

U.S. District Court for the Western District of Wisconsin
May 14, 2008

United States Court of Appeals for the Third Circuit
August 12, 2009

United States Court of Appeals for the Fourth Circuit
April 11, 2011

United States Court of Appeals for the Eleventh Circuit
August 19, 2011

U.S. District Court for the Southern District of Indiana
November 16, 2015

U.S. District Court for the Southern District of Texas
January 19, 2017

U.S. District Court for the District of Colorado
April 20, 2017

U.S. District Court for the District of New Jersey
July 6, 2017

U.S. District Court for the Eastern District of Missouri
June 28, 2018

8.    I have been admitted *pro hac vice* to the following courts:

U.S. District Court for the Southern District of Florida

U.S. District Court for the District of Maryland

U.S. District Court for the District of Minnesota

U.S. District Court for the District of Nevada

U.S. District Court for the Southern District of Ohio

U.S. District Court for the Eastern District of Pennsylvania

U.S. District Court for the Western District of Pennsylvania

U.S. District Court for the Eastern District of Virginia

## Background and Qualifications

9.      From 1991 until October 2001, I was employed by the law office of

Peter Marc Stern in New York, New York.

10.      In October 2001, I started my own practice, Bromberg Law Office, P.C.,

f/k/a Brian L. Bromberg, P.C., concentrating in the field of consumer protection law.

11.      I have experience in the fields of commercial litigation, bankruptcy,

real estate, landlord/tenant law, trusts and estates, and criminal law.

12.      I now focus my practice on representation of consumers in consumer

rights litigation and class actions.

13.      I am a member of the following professional organizations:

Federal Bar Council
National Association of Consumer Advocates
Association of Small Claims Court Arbitrators

14.      In November 2014, I was elected to the Board of Directors of the

National Association of Consumer Advocates (NACA); in 2017, I was reelected to

the same position.

15.     With over 1,700 members, NACA is the premier membership organization for consumer-protection attorneys in the United States.

16.     In November 2015, I was elected Treasurer of NACA; in 2017, I was reelected to the same position.

17.     I am the principal author of an *amicus curiae* brief filed on behalf of AARP and NACA in the case of *Naposki v. The First National Bank of Atlanta d/b/a Wachovia Bank Card Services, and Wachovia Corporation*, New York Supreme Court, Appellate Division, Second Department, Appellate Case No. 2002-02506.

18.     On behalf of NACA, I also helped prepare an *amicus curiae* brief submitted (on October 6, 2006) to the New York Court of Appeals by NACA and 12 other non-profit legal services and public interest organizations, in the case entitled *Merscorp, Inc. v. Romaine*.  I have assisted in the preparation of other *amicus* briefs that affect consumers' rights.

19.     I am experienced in trial and appellate court litigation and have the following reported cases, among others:

> *Gonzalez-Vasquez v. Mayors Auto Group-Woodside, LLC*, 60 Misc.3d 1211(A) (S.Ct., Bronx Cty 2018)
>
> *Ruane v. Bank of America, N.A.*, 308 F.Supp.3d 718 (E.D.N.Y. 2018)
>
> *Biber v. Pioneer Credit Recovery, Inc.*, 2018 WL 1633603 (E.D.Vir. Jan. 31, 2018)
>
> *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656 (D.Co. 2018)
>
> *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 2017 WL 4404433 (E.D.N.Y. Sept. 29, 2017)

*Dixon v. A Better Way Wholesale Autos, Inc.*, 692 Fed.Appx. 664 (2d Cir. 2017) (summary order)

*Franco v. A Better Way Wholesale Autos, Inc.*, 690 Fed.Appx. 741 (2d Cir. 2017) (summary order)

*Eades v. Kennedy, PC Law Offices*, 2016 6988913 (W.D.N.Y. Nov. 22, 2016)

*McCrobie v. Palisades Acquisition XVI, LLC*, 664 Fed.Appx. 81 (2d Cir. 2016) (summary order)

*White v. Fein, Such and Crane, LLP*, 2016 WL 6493415 (W.D.N.Y. Nov. 1, 2016)

*Annunziato v. Collecto, Inc.*, 207 F.SUpp.3d 249 (E.D.N.Y. 2016)

*Godson v. Eltman, Eltman & Cooper, PC*, 177 F.Supp.3d 803 (W.D.N.Y. 2016)

*Godson v. Eltman, Eltman & Cooper, PC*, 2015 WL 9434228 (W.D.N.Y. Dec. 22, 2015)

*Godson v. Eltman, Eltman & Cooper, PC*, 2015 WL 5784908 (W.D.N.Y. Sept. 30, 2015)

*Hallmark v. Cohen & Slamowitz, LLP*, 2015 WL 4483959 (W.D.N.Y. July 22, 2015)

*Dykes v. Portfolio Recovery Associates, LLC*, 111 F.Supp.3d 739 (E.D. Virginia 2015)

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015)

*Dykes v. Portfolio Recovery Associates, LLC*, 306 F.R.D. 529 (E.D. Virginia 2015)

*Hallmark v. Cohen & Slamowitz, LLP*, 307 F.R.D. 102 (W.D.N.Y. 2015)

*Sickler v. Colvin*, 2015 WL 1600320 (S.D.N.Y. Apr. 9, 2015)

*Annunziato v. Collecto, Inc.*, 304 F.R.D. 165 (E.D.N.Y. 2015)

*Hallmark v. Cohen & Slamowitz, LLP*, 304 F.R.D. 165 (W.D.N.Y. 2015)

*Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 2015 WL 59246 (E.D.N.Y. Jan. 2, 2015)

*Clarke v. Hudson Valley Federal Credit Union*, 2014 WL 6791184 (S.D.N.Y. Dec. 2, 2014)

*DeJesus v. City of New York*, 55 F.Supp.3d 520  (S.D.N.Y. Oct. 28, 2014)

*Hallmark v. Cohen & Slamowitz, LLP*, 302 F.R.D. 295 (W.D.N.Y. 2014)

*Hallmark v. Cohen & Slamowitz, LLP*, 2014 WL 2028426 (W.D.N.Y. Sept. 15, 2014)

*Stinson v. Delta Management Associates, Inc.*, 302 F.R.D. 160 (S.D.Ohio 2014)

*Hallmark v. Cohen & Slamowitz, LLP*, 300 F.R.D. 110 (W.D.N.Y. 2014)

*Annunziato v. Collecto, Inc.*, 2014 WL 1410255 (E.D.N.Y. April 12, 2014)

*Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 988480 (E.D.N.Y. Mar. 14, 2014) (report and recommendation), adopted in part, rejected in part, *Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014)

*Kelen v. World Financial Network National Bank*, 295 F.R.D. 87 (S.D.N.Y. 2013)

*Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410 (W.D.N.Y. 2013), reconsideration denied, 2014 WL 51322 (Jan. 8, 2014)

*Godson v. Eltman, Eltman & Cooper, PC*, 2013 WL 4832715 (W.D.N.Y. Sept. 11, 2013)

*Castro v. Green Tree Servicing, LLC*, 959 F.Supp.2d 698 (S.D.N.Y. 2013).

*Annunziato v. Collecto, Inc.*, 293 F.R.D. 329 (E.D.N.Y. 2013)

*Rubinstein v. Department Stores Nat. Bank*, 955 F.Supp.2d 260 (S.D.N.Y. 2013)

*Taub v. Department Stores Nat. Bank*, 950 F.Supp.2d 698 (S.D.N.Y. 2013)

*Lee v. Forster & Garbus LLP*, 926 F.Supp.2d 482 (E.D.N.Y. 2013)

*Linsley v. FMS Investment Corp.*, 288 F.R.D. 11 (D.Conn. 2013)

*Easterling v. Collecto, Inc.*, 692 F.3d 229 (2d Cir. 2012)

*Dashiell v. Van Ru Credit Corp.*, 283 F.R.D. 319 (E.D.Virginia 2012)

*Phillips v. City of New York*, 871 F.Supp.2d 200 (E.D.N.Y. 2012)

*Castro v. Green Tree Servicing LLC*, 2012 WL 2428190 (S.D.N.Y. June 22, 2012)

*Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136 (W.D.N.Y. 2012)

*Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321 (E.D.N.Y. 2012)

*Ellis v. General Revenue Corp.*, 274 F.R.D. 53 (D. Conn. 2011), motion to certify appeal denied, 2011 WL 2669155 (D. Conn. July 6, 2011), and leave to appeal denied, 2011 WL 3490271 (2d Cir. Aug. 9 2011)

*Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117 (2d Cir. 2011)

*Rubinstein v. Department Stores National Bank*, 2011 WL 147721 (S.D.N.Y. Jan. 11, 2011)

*Cunningham v. Electronic Data Systems Corp.*, 754 F. Supp. 2d 638 (S.D.N.Y. 2010)

*Follman v. World Financial Network National Bank*, 721 F. Supp. 2d 158 (E.D.N.Y. 2010)

*Taub v. Big M, Inc.*, 719 F. Supp. 2d 325 (S.D.N.Y. 2010)

*Lemire v. Wolpoff & Abramson, LLP*, 2010 WL 1444581 (D. Conn. April 9, 2010)

*Tobey v. National Action Financial Services, Inc.*, 2009 WL 3734320 (E.D.N.Y. Nov. 4, 2009)

*Miller v. Upton, Cohen & Slamowitz*, 579 F. Supp. 2d 189 (E.D.N.Y. Oct. 5, 2009)

*Lemire v. Wolpoff & Abramson*, LLP, 256 F.R.D. 321 (D. Conn. 2009)

*Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360 (E.D.N.Y. 2008)

*Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290 (E.D.N.Y. 2008)

*Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675 (D. Nev. 2008)

*Francis v. A&E Stores, Inc.*, 2008 WL 46129858 (S.D.N.Y. Oct. 16, 2008)
     (adopting report and recommendation, as modified), and 2008 WL
     2588851 (S.D.N.Y. June 26, 2008) (report and recommendation)

*Bowens v. Atlantic Maintenance Corp.*, 2008 WL 704319 (E.D.N.Y. March 14,
     2008)

*Simon v. Williams & Fudge, Inc.*, 2008 WL 268294 (S.D.N.Y. Jan. 28, 2008)

*Ingram v. Coach USA, Inc.*, 2008 WL 281224 (D.N.J. Jan. 28, 2008)

*Henry v. Westchester Foreign Autos, Inc.*, 522 F. Supp. 2d 610 (S.D.N.Y.
     2007)

*Meselsohn v. Lerman*, 485 F. Supp. 2d 215 (E.D.N.Y. 2007)

*Ayzelman v. Statewide Credit Services Corp.*, 242 F.R.D. 23 (E.D.N.Y. 2007)

*Ayzelman v. Statewide Credit Services Corp.*, 2006 WL 3388651 (E.D.N.Y.
     Nov. 21, 2006)

*Bourlas v. Davis Law Associates*, 237 F.R.D. 345 (E.D.N.Y. 2006)

*Trevino v. ACB American, Inc.*, 2006 WL 391797 (N.D. Cal. Feb. 17, 2006)

*Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D. Cal. 2006)

*Lawrence v. Borah, Goldstein, Altschuler, Schwartz & Nahins, P.C.*, 2005 WL
     2875383 (S.D.N.Y. Nov. 1, 2005)

*Naposki v. First Nat. Bank of Atlanta*, 18 A.D.3d 834, 797 N.Y.S.2d 99 (2d
     Dept. 2005)

*Burns v. First American Bank*, 2005 WL 1126904 (N.D. Ill. April 28, 2005)

*Weniger v. Arrow Financial Services, LLC*, 2004 WL 2980646 (N.D. Ill. Dec.
     21, 2004)

*Weniger v. Arrow Financial Services, LLC*, 2004 WL 2609192 (N.D. Ill. Nov. 17, 2004)

*Jacobs v. ABN-Amro Bank N.V.*, 2004 WL 869557 (E.D.N.Y. April 21, 2004)

*Bracken v. Harris & Zide , L.L.P.*, 219 F.R.D. 481 (N.D. Cal. 2004)

*McDowall v. Leschack & Grodensky, P.C.*, 279 F. Supp. 2d 197 (S.D.N.Y. 2003)

*McDowall v. Cogan*, 216 F.R.D. 46 (E.D.N.Y. 2003)

*Miller v. Wolpoff & Abramson, LLP*, 471 F. Supp. 2d 243 (E.D.N.Y. 2007)

*Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292 (2d Cir. 2003)

*Trang v. HSBC Mortgage Corp.*, NYLJ, April 17, 2002, p. 28, col. 3

*Mailloux v. Arrow Financial Services*, LLC, 204 F.R.D. 38 (E.D.N.Y. 2001)

*Mailloux v. Arrow Financial Services, LLC*, 2002 WL 246771 (E.D.N.Y. Feb. 21, 2002)

20.    I am also experienced in consumer fraud class action litigation and have participated in numerous certified consumer class-action cases. Since this matter is not a class action, I will not dwell on these.

21.    In addition, I served on the National Association of Consumer Advocates Class Action Guidelines Revision Committee. The Committee revised the 1997 NACA Guidelines for Litigating and Settling Consumer Class Actions, 176 F.R.D. 375 (1998). The revised Guidelines, Nat'l Ass'n of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions* (rev. 2006), were adopted and published at 255 F.R.D. 215 (2d ed. 2006). (The Guidelines have recently been revised a third time, but I was not involved in that revision.)

22.     From 2007-2009 and from 2012-2014, I served on the Consumer Affairs Committee of the Association of the Bar of the City of New York.

23.     From 2009-2012, I served on the Civil Courts Committee of the Association of the Bar of the City of New York.

24.     I have spoken to the public about consumer-protection issues and lobbied Congress concerning consumer-protection issues and spoken at a press conference in support of a bill introduced in Congress to provide consumers with more information and give them greater protection when they use credit cards.

25.     I have testified concerning debt-collection abuse before the New York City Department of Consumer Affairs and the New York State General Assembly Committee on Consumer Affairs and Protection.

26.     I lectured at National Consumer Law Center and National Association of Consumer Advocates conferences in November 2006, March 2007, September 2007, November 2007, March 2008, May 2008, February 2009, March 2010, November 2010, March 2011, November 2011, February 2012, March 2014, March 2015, March 2016, March 2017, April 2017, and March 2018. I have also spoken on consumer-law issues at the Association of the Bar of the City of New York, the New York County Lawyers Association, the Suffolk County Bar Association, the Association of Small Claims Court Arbitrators, and New York Law School.

27.     In December 2009, I participated in a Federal Trade Commission Debt Collection Roundtable.

28.     In February 2010, MFY Legal Services, Inc. (recently renamed "Mobilization for Justice") honored me for my work on consumer rights with a Partner in Justice Award, "in recognition of exemplary pro bono service and commitment to ensuring equal access to justice for all."

29.     In April 2012, I was invited to speak about "Class Action Developments and Settlements" at the premier class-action-defense-bar conference: Practising Law Institute's "17th Annual Consumer Financial Services Institute in NYC."

30.     In July 2013, I was invited to speak again on a Practising Law Institute panel for a program entitled "Representing the Pro Bono Client: Consumer Law Basics 2013.

31.     In November 2016, I was invited to speak on a panel of attorneys at New York Law School about the Consumer Financial Protection Bureau's anticipated rules prohibiting the class-action waivers in arbitration clauses in consumer contracts and requiring the reporting of detailed records concerning the results of consumer-arbitration proceedings. (Shortly thereafter, the rules were promulgated by the CFPB, but they were overturned by Congress under the Congressional Review Act.)

32.     In addition, although not related to consumer-finance issues, I have frequently served as pro bono *amicus* counsel on behalf of food-policy organizations attempting to address issues concerning obesity and nutritional labelling.

## My Hourly Rate

33.     I am billing at a rate of $400 an hour on this matter, even though I have been approved at higher billing rates.

34.     As my expertise in the field of consumer litigation has increased, federal judges have by-and-large steadily increased my approved rates:

a.  $200/hour – *Cooper v. Sunshine Recoveries, Inc.*, No. 00-CIV-8898(LTS)(JCF), 2001 WL 740765 (S.D.N.Y. Francis, M.J.  June 27, 2001) (FDCPA case in Manhattan)

b.  $225/hour – *Kapoor v. Rosenthal*, 269 F.Supp.2d 408 (S.D.N.Y. Ellis, M.J. 2003) (FDCPA case in Manhattan)

c.  $300/hour – *Cinelli v. MCS Claim Svcs.*, 236 F.R.D. 118 (E.D.N.Y. Boyle, M.J. 2006) (FDCPA case in Central Islip)

d.  $300/hour – *Larsen v. JBC Legal Group, P.C.*, 588 F.Supp.2d 360 (E.D.N.Y. Boyle, M.J. 2006) (FDCPA case in Central Islip)

e.  $350/hour (plus a 1.38 multiplier) – *Lewis v. Northeast Credit & Collections, Inc.*, S.D.N.Y. No. 07-CV-11593(SCR) (Robinson, J.) (FDCPA case in White Plains; no written decision, but the multiplier request and the resulting court order, filed September 2, 2009, are reflected on PACER)

f.  $400/hour (plus a 2.0 multiplier) – *Schwartz v. GE Capital Consumer Card Co.*, E.D.N.Y. No. 06-CV-394(JMA) (Azrack, M.J.) (TILA case in Brooklyn; no written decision, but the multiplier

request and the resulting order, filed September 25, 2007, are
reflected on PACER)

g. $450/hour (plus a 2.25 multiplier) – *Rubinstein v. Department
Stores National Bank*, No. 08-cv-1596(LTS)(GWG), 2011 WL
147721 (S.D.N.Y. Jan. 11, 2011)

h. $500/hour – *Milo v. Barneys, Inc.*, SDNY, Case No. 10-cv-3133
(PKC) (TILA case in Manhattan; no written decision, but the rate
and the resulting order are reflected on PACER)

i. $550/hour (plus a 3.2 multiplier) – *Strubel v. Talbots Classics
National Bank*, S.D.N.Y., Case No. 13-CV-1106 (PAE) (TILA case in
Manhattan; no written decision, but the rate and the resulting
order are discussed at length on the record by Judge Engelmayer)

j. $600/hour (plus a 1.16 multiplier) – *Zevon v. Department Stores
National Bank*, S.D.N.Y., Case No. 12-CV-7799 (PAC) (TILA case in
Manhattan; no written decision, but the rate and the resulting
order were approved by the Court and the award is reflected on
PACER)

k. $550/hour (plus a 1.5 multiplier) – *Biber v. Pioneer Credit
Recovery, Inc.*, E.D. Vir. Case No. 16-CV-804 (FDCPA case in
Virginia; the court's written decision granting final approval, *Biber
v. Pioneer Credit Recovery, Inc.*, 2018 WL 1633603 (E.D.Vir. Jan.
31, 2018), reflects only the total fees and costs awarded, but the

14

rate and multiplier are reflected in the motion papers seeking final

approval of the class settlement – these papers can be found on

PACER)

35.     Thus, here, my rate of $400 an hour is reasonable considering my 27

years of experience as an attorney and my extensive experience with consumer class

action litigation. *See De La Paz v. Rubin & Rothman, LLC*, 2013 WL 6184425 (Nov.

25, 2013), and *White v. First American Registry*, 2007 WL 703926 (Mar. 7, 2007) (in

both cases awarding $550 an hour to James Fishman, a seasoned attorney with

whom I have worked and lectured at the City Bar and at national consumer-law

conferences); *see also, Perez v. Tri State Auto Mall, Inc.*, No. 10–cv–2389 (CBA)(JO),

2011 WL 2621323 (E.D.N.Y. June 29, 2011) (finding a rate of $350 an hour

reasonable for an attorney who has only been practicing consumer law for slightly

over 10 years).

36.     My contemporaneous records, reflecting my office's time, costs, and

disbursements in connection with all three of the above-captioned cases, are

attached as Exhibit A and Exhibit B. (Exhibit A was e-filed with the U.S. District

Court for the Eastern District of New York, and covers the period up to January 18,

2017. Exhibit B covers the period from January 19, 2017 to the present.)

37.     Based upon my records, I have accumulated approximately 49.60

hours of time at a billing rate of $400 an hour for a total of $19,840 in time.

38.     I have also incurred $687.27 in costs and disbursements in connection

with this matter.

39.     Accordingly, the total amount in billable fees, costs and disbursements

to date for my office is $20,527.27, as reflected in Exhibits A and B.

Under 28 U.S.C. § 1746, I, Brian L. Bromberg, do hereby certify under

penalties of perjury, that the above statements are true and correct to the extent

they reflect my personal knowledge and otherwise are based upon my information

and belief.

Dated:     New York, New York
           August 24, 2018

Brian L. Bromberg

16

# Exhibit A

# Bromberg Law Office, P.C.

26 Broadway
21st Floor
New York, NY 10004
(212) 248-7906

---

**William Lovelace**

**Re:** Lovelace, William and Octavia v. Showroom Auto, LLC

**Date:** 1/18/2017
**File Number:** /
**Invoice Number:** 11044

---

| Date | Initials | Description of Service | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 06/01/2016 | BLB | Attend initial intake meeting with clients | 1.50 | 600.00 |
| 06/08/2016 | BLB | Telephone call w/ Octavia Lovelace re what else we need | 0.10 | 40.00 |
| 07/01/2016 | BLB | Reviewed matter with Dan Blinn, including review of documents and recordings | 0.50 | 200.00 |
| 07/07/2016 | BLB | Telephone call w/ Dan Blinn and with Octavia and William Lovelace re case | 1.00 | 400.00 |
| 09/05/2016 | BLB | Email correspondence with client, Octavia Lovelace, about the complaint | 0.40 | 160.00 |
| 09/05/2016 | BLB | Read and reviewed complaint | 0.50 | 200.00 |
| 09/06/2016 | BLB | Preparation of revised complaint with fraud claim | 1.40 | 560.00 |
| 09/07/2016 | BLB | Final preparation and filing of complaint and supporting documents | 1.20 | 480.00 |
| 09/12/2016 | BLB | Email correspondence with Octavia Lovelace re call she received from the defendant | 0.10 | 40.00 |
| 09/27/2016 | BLB | Telephone call w/ Dan Blinn re various case issues | 0.10 | 40.00 |

| 11/03/2016 | BLB | Email correspondence with client re default request | 0.10 | 40.00 |
| 11/03/2016 | BLB | Preparation, service and filing of default papers | 0.90 | 360.00 |
| 11/07/2016 | BLB | Telephone call w/ Ira Pollack | 0.20 | 80.00 |
| 11/08/2016 | BLB | Email correspondence with Ira Pollack, Esq., providing him with a copy of the Entry of Default document | 0.10 | 40.00 |
| 11/10/2016 | BLB | Telephone call w/ Ira Pollack -- agreed to give him a week or two to put in an answer | 0.30 | 120.00 |
| 12/02/2016 | BLB | Correspondence -- status letter to Judge Pollak; copied by email and first-class mail to Ira Pollack, Esq. | 0.50 | 200.00 |
| 01/03/2017 | BLB | Edited and supplemented draft of motion-for-default papers prepared by Dan Blinn's office | 2.60 | 1,040.00 |
| 01/06/2017 | BLB | Telephone call w/ Lori Miner re moving for default | 0.10 | 40.00 |
| 01/09/2017 | BLB | Telephone call w/ Dan Blinn re default motion | 0.10 | 40.00 |
| | | **Total Fees** | **11.70** | **$4,680.00** |

**Expenses**

| 09/12/2016 | E107 Delivery services/messengers -- process server | 18.00 | |
| 09/12/2016 | Filing Fees | 400.00 | |
| 09/12/2016 | Filing Fees -- Secretary of State service | 40.00 | |
| | **Total Expenses** | | **$458.00** |

**TOTAL NEW CHARGES**                                   **$5,138.00**

**STATEMENT OF ACCOUNT**

| Current Fees | 4,680.00 |
| Current Expenses | 458.00 |
| **AMOUNT DUE AND OWING TO DATE** | **$5,138.00** |

# Exhibit B

# Bromberg Law Office, P.C.

26 Broadway
21st Floor
New York, NY 10004
(212) 248-7906

**William Lovelace**

**Re:** Lovelace, William and Octavia v.
Showroom Auto, LLC

**Date:** 8/24/2018
**File Number:** /
**Invoice Number:** 11052

| Date | Initials | Description of Service | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 01/18/2017 | BLB | Preparation of revised motion for default documents | 1.20 | 480.00 |
| 01/19/2017 | BLB | Preparation of motion papers and memorandum in support | 2.50 | 1,000.00 |
| 01/20/2017 | BLB | Final preparation, service and e-filing of motion papers | 1.20 | 480.00 |
| 01/20/2017 | BLB | Email correspondence with client, attaching a copy of the motion-for-default papers | 0.10 | 40.00 |
| 01/27/2017 | BLB | Telephone call to Chamber -- Judge Korman already has the courtesy copies; email to co-counsel about same | 0.20 | 80.00 |
| 01/29/2017 | BLB | Correspondence with the Court re documents containing personal data identifiers having been e-filed by Defendant's attorney | 0.60 | 240.00 |
| 02/01/2017 | BLB | Research on PACER and NY OCA E-Courts re other cases filed against Showroom Auto | 1.90 | 760.00 |
| 02/02/2017 | BLB | Telephone call w/ Dan Blinn re motion to open default | 0.30 | 120.00 |
| 02/06/2017 | BLB | Correspondence with Judge Korman re Order Vacating Judgment | 0.80 | 320.00 |
| 02/07/2017 | BLB | Reply correspondence with Judge Korman | 2.30 | 920.00 |
| 02/07/2017 | BLB | Telephone call w/ Octavia Lovelace | 0.20 | 80.00 |
| 02/10/2017 | BLB | Telephone call w/ Dan Blinn re arbitration issues | 0.20 | 80.00 |
| 02/13/2017 | BLB | Telephone call w/ Octavia Lovelace re arbitration -- she's good with commencing arbitration, but I told her that I wanted to speak with her father and get his confirmation as well | 0.30 | 120.00 |
| 02/17/2017 | BLB | Telephone call w/ William and Octavia Lovelace -- I explained arbitration -- he authorized me to move for arbitration | 0.30 | 120.00 |
| 02/21/2017 | BLB | Telephone call w/ Chambers -- counsel only for tomorrow's settlement conference | 0.10 | 40.00 |
| 02/21/2017 | BLB | Correspondence with defense counsel re | 0.30 | 120.00 |

| | | | | |
|---|---|---|---|---|
| | | tomorrow's settlement conference | | |
| 02/21/2017 | BLB | Telephone call w/ Dan Blinn re upcoming settlement conference | 0.10 | 40.00 |
| 02/22/2017 | BLB | Court, preparation for and attendance at settlement conference before Magistrate Judge Pollak | 1.00 | 400.00 |
| 02/22/2017 | BLB | Telephone call w/ Dan Blinn re Showroom's affidavit | 0.20 | 80.00 |
| 02/24/2017 | BLB | Research of arguments made in Defendant's motion to dismiss; drafted email memorandum to co-counsel re issues raised by Defendant | 1.50 | 600.00 |
| 02/25/2017 | BLB | Email correspondence with client, conveying Defendant's $1,000 settlement offer | 0.10 | 40.00 |
| 03/13/2017 | BLB | Telephone call w/ Dan Blinn re motion to dismiss issues | 0.20 | 80.00 |
| 03/20/2017 | BLB | Preparation of revised memorandum in opposition | 5.10 | 2,040.00 |
| 03/22/2017 | BLB | Final preparation and e-filing of Memorandum in Opposition | 2.30 | 920.00 |
| 04/07/2017 | BLB | Telephone call w/ Dan Blinn re letter brief | 0.10 | 40.00 |
| 04/26/2017 | BLB | Email correspondence with client re case status | 0.30 | 120.00 |
| 11/10/2017 | BLB | Telephone call w/ defense counsel and Dan Blinn | 0.30 | 120.00 |
| 11/14/2017 | BLB | Email correspondence with co-counsel re settlement demand | 0.30 | 120.00 |
| 11/14/2017 | BLB | Email correspondence with client re settlement demand | 0.10 | 40.00 |
| 12/05/2017 | BLB | Telephone call w/ Octavia Lovelace -- left voicemail | 0.10 | 40.00 |
| 02/26/2018 | BLB | Telephone call w/ Lori Miner re status letter to court | 0.10 | 40.00 |
| 04/16/2018 | BLB | Telephone call w/ all counsel and with the arbitrator re discovery and scheduling | 0.80 | 320.00 |
| 04/23/2018 | BLB | Telephone call w/ client re counterclaim | 0.10 | 40.00 |
| 05/15/2018 | BLB | Telephone call w/ arbitrator and all counsel | 0.30 | 120.00 |
| 05/16/2018 | BLB | Telephone call w/ Dan Blinn re strategy | 0.10 | 40.00 |
| 07/23/2018 | BLB | Preparation of revised pre-hearing memorandum with New York law | 1.90 | 760.00 |
| 07/26/2018 | BLB | Telephone call w/ Lori Miner | 0.30 | 120.00 |
| 07/29/2018 | BLB | Research of other cases against Showroom Auto; email to co-counsel re one case in particular | 0.70 | 280.00 |
| 07/31/2018 | BLB | Correspondence with defense counsel attaching pleadings from other cases in which Showroom was a defendant | 0.20 | 80.00 |
| 07/31/2018 | BLB | Email correspondence with Steven Coren re copying us on communications with the Arbitrator | 0.10 | 40.00 |
| 08/06/2018 | BLB | Preparation for client meeting | 1.00 | 400.00 |
| 08/06/2018 | BLB | Attend meeting w/ clients and Dan Blinn | 2.90 | 1,160.00 |
| 08/09/2018 | BLB | Preparation for and attendance at arbitration | 5.00 | 2,000.00 |
| 08/23/2018 | BLB | Telephone call w/ Dan Blinn | 0.20 | 80.00 |
| | | **Total Fees** | **37.90** | **$15,160.00** |

**<u>Expenses</u>**

| | | |
|---|---|---|
| 02/01/2017 | Filing Fees -- Alexander Poole & Associates -- $30 for certified copies and $15 to have Alexander Poole obtain an affidavit from the New York Secretary of State | 45.00 |
| 02/07/2017 | E107 Delivery services/messengers -- Federal Express of correspondence to Judge Korman | 44.17 |
| 02/07/2017 | E107 Delivery services/messengers -- Federal Express of documents to instructing research assistant Pollack | 44.17 |
| 02/22/2017 | E107 Delivery services/messengers -- Federal Express of documents to instructing research assistant Pollack | 54.75 |
| 10/19/2017 | E107 Delivery services/messengers -- Federal Express of Demand for Arbitration to Defendant and to instructing research assistant Pollack | 41.18 |

**Total Expenses**        **$229.27**

**TOTAL NEW CHARGES**        **$15,389.27**

**STATEMENT OF ACCOUNT**

| | |
|---|---|
| Prior Balance | 5,138.00 |
| Current Fees | 15,160.00 |
| Current Expenses | 229.27 |
| **AMOUNT DUE AND OWING TO DATE** | **$20,527.27** |

PER: _____

**Brian L. Bromberg**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLIAM J. LOVELACE and      :    No. 16-CV-04978 (ERK)(CLP)
OCTAVIA LOVELACE            :
     Plaintiffs,              :
                                :
     v.                       :
                                :
                                :
SHOWROOM AUTO, LLC        :
     Defendant            :
                                :

**Plaintiffs' Memorandum in Opposition to Cross-Motion for Dismissal**

Attorneys for Plaintiffs

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906

Daniel S. Blinn
Consumer Law Group, LLC
35 Cold Spring Rd, Suite 512
Rocky Hill, CT 06067-9997
Tel: (860) 571-0408

i

# Table of Contents

Table of Authorities ................................................................................. ii

Introduction and Procedural Background .................................................. 1

Argument ................................................................................................ 2

   I.    Because Plaintiff Octavia Lovelace has neither executed an agreement to arbitrate nor entered into an agreement restricting her choice of venue, she cannot be compelled to arbitrate or change forum ..................................... 2

   II.    Because Plaintiffs have stated a valid claim, the case should not be dismissed under Rule 12(b)(6) ...................................................................... 3

   III.   No party has elected to arbitrate, and dismissal would be improper. .......... 7

   IV.   Even if arbitration had been elected, dismissal would be improper, because the Court should stay the proceedings rather than dismiss the action .................. 8

   V.    Because the parties have entered into inconsistent dispute-resolution provisions, there has been no mutual assent to arbitrate........................................ 9

   VI.   Forum non conveniens does not apply to claims potentially subject to arbitration ................................................................................................ 13

   VII.  The forum selection clauses relied upon by Defendant are not enforceable, because they are inconsistent, were not reasonably communicated to William Lovelace, and are unreasonable, unjust, and overreaching ................................... 14

Conclusion ............................................................................................. 20

# Table of Authorities

Page(s)

**Cases**

*Abercrombie v. Wells Fargo Bank,*
   417 F.Supp.2d 1006 (N.D. Ill. 2006) ....................................................................... 20

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......................................... 4

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 1740, 131 S.Ct. 1740, 179 L. Ed.2d 742 (2011) ...................................... 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......................................... 4

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
   345 F.3d 347 (5th Cir. 2003) ..................................................................................... 3

*BRM Indus., Inc. v. Mazak Corp.,*
   42 F.Supp.2d 176 (D. Conn. 1999) .......................................................................... 17

*Carrano v. Harborside Healthcare Corp.,*
   199 F.R.D. 459 (D. Conn. 2001) .............................................................................. 17

*Equal Employment Opportunity Comm'n v. Waffle House, Inc.,*
   534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) .......................................... 3

*First Family Fin. Services, Inc. v. Rogers,*
   736 So. 2d 553 (Ala. 1999) ........................................................................................ 3

*Flores v. Evergreen at San Diego, Inc.,*
   55 Cal. Rptr. 3d 823 (Ct. App. 2007) ......................................................................... 3

*Giusti v. Morgan Stanley Smith Barney, LLC,*
   581 Fed.Appx. 34 (2d Cir. 2014) ............................................................................. 15

*Goldman v. Belden,*
   754 F.2d 1059 (2d Cir.1985) ...................................................................................... 3

*Haskel v. FPR Registry, Inc.,*
   862 F.Supp. 909 (E.D.N.Y. 1994) ............................................................................ 17

*Katz v. Cellco Partnership,*
794 F.3d 341 (2d Cir. 2015) ............................................................... 9

*Lafayette Texaco, Inc. v. Smith,*
No. 08cv406, 2010 WL 653494 (M.D. Ala. Feb. 19, 2010) ...................... 3

*Lopez v. Lando Resorts Corp.*
No. 14-CV-1609, 2015 WL 3473894 (D. Conn. June 2, 2015) .............. 16

*Magi XXI, Inc. v. Stato Della Del Vaticano,*
818 F. Supp.2d 597 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir.
2013) ................................................................................................ 16

*Martinez v. Bloomberg LP,*
883 F. Supp. 2d 511 (S.D.N.Y. 2012) ................................................ 16

*McCarthy v. Dun & Bradstreet Corp.,*
482 F.3d 184 (2d Cir.2007) ................................................................. 3

*Midwest Fin. Holdings, L.L.C. v. P & C Ins. Sys., Inc.,*
No. 07-3156, 2007 WL 4302436 (C.D. Ill. Dec. 7, 2007) ....................... 3

*Mourning v. Family Publication Services, Inc.,*
411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) ............................ 5

*NAACP of Camden County East v. Foulke Management Corp.,*
421 N.J. Super 404, 24 A.3d 777 (N.J. Super. Ct. App. Div. 2011) .... 10, 11, 12, 13

*Norwood v. Kirkpatrick,*
349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955) ................................. 14

*Nowak v. Ironworkers Local 6 Pension Fund,*
81 F. 3d 1182 (2d Cir. 1996) ............................................................... 3

*Phillips v. Audio Active, Ltd.,*
494 F. 3d 378 (2d Cir. 2007) ......................................................... 15, 16

*Poulin v. Balise Auto Sales, Inc.,*
647 F.3d 36 (2d Cir. 2011) ................................................................. 7

*Saye v. First Specialty Ins. Co.,*
No. 14-CV-5946, 2015 WL 1737949 (E.D.N.Y. Apr. 16, 2015) ............. 16

*Schwartz v. Comenity Capital Bank,*
No. 13-Civ-4896, 2015 WL 410321 (S.D.N.Y. Feb. 2, 2015) ................. 20

*Taub v. World Financial Network Bank*,
    950 F.Supp. 2d 698 (S.D.N.Y. 2013) ....................................................................... 19

*Thome v Alexander & Louisa Calder Found.*,
    70 A.D.3d 88 (1st Dep't 2009), *lv denied* 15 N.Y.3d 703 (2010) ........................... 12

*Universal Underwriters Life Ins. Co. v. Dutton*,
    736 So. 2d 564 (Ala. 1999) ........................................................................................ 3

## Statutes

28 U.S.C. § 1404 ....................................................................................................... 17

28 U.S.C. § 1441, *et seq.* ......................................................................................... 15

28 U.S.C. § 1447 ....................................................................................................... 15

28 U.S.C. § 1631 ....................................................................................................... 15

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ................................................... *passim*

General Business Law §§ 349 ........................................................................... 1, 4, 7

General Business Law §§ 350 ........................................................................... 1, 4, 7

New York City Civil Court Act § 202 ....................................................................... 18

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ............................................. *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6) .................................................................................... *passim*

Reg. Z, 12 C.F.R. § 226.2(a)(9) (2011) ..................................................................... 6

Reg. Z, 12 C.F.R. § 226.4(a) (2010) .......................................................................... 6

## Introduction and Procedural Background

Plaintiffs William J. Lovelace and Octavia Lovelace brought this action against Showroom Auto, LLC, an automobile dealer, for violations of the Truth in Lending Act ("TILA")[1] and New York's Deceptive Acts and Practices and False Advertising statutes, General Business Law ("GBL") §§ 349 and 350, respectively. Plaintiffs' claims arise from Defendant's fraudulent automobile sales practices. The Court entered default on November 4, 2016 for Showroom Auto's failure to answer the complaint, and Plaintiffs moved for judgment on January 20, 2017. Defendant moved to vacate the default and to dismiss the Complaint on January 28, 2017. Plaintiffs opposed the motion to vacate the default, and on February 6, 2017, the Court denied the motion for judgment and granted the motion to reopen the default. The Court further directed Plaintiffs to respond to the motion to dismiss within 30 days. Plaintiffs sought and obtained an extension of two weeks.

Defendant is moving to dismiss under Rule 12(b)(6), based upon the presence of an arbitration clause in the parties' Retail Installment Sales Contract (the "RISC"). In the alternative, Defendant is seeking an order that the case be transferred to New York County Supreme Court or Queens Supreme Court under purported forum-selection clauses contained in a Purchase Order and in a Customer Acknowledgement.

---

[1] Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*

1

As shown below, Defendant is not entitled to any of the requested relief with respect to Octavia Lovelace, because she never signed any of the documents upon which Defendant relies. Additionally, dismissal under Rule 12(b)(6) is improper, because both Plaintiffs state valid claims. Dismissal of the action is also improper because there has been no election by Defendant to arbitrate; because there was no mutual assent to arbitrate; and because the Federal Arbitration Act ("FAA")[2] provides that actions should be stayed and not dismissed pending a resolution in arbitration. Finally, dismissal is not appropriate under the doctrine of *forum non conveniens* because that doctrine does not apply to arbitration clauses and because the forum selection clauses were not reasonably communicated to William Lovelace and are avoidable on account of being unreasonable, unjust, and overreaching.

## Argument

### I. Because Plaintiff Octavia Lovelace has neither executed an agreement to arbitrate nor entered into an agreement restricting her choice of venue, she cannot be compelled to arbitrate or change forum

As a threshold matter, Plaintiffs note that Octavia Lovelace is not a signatory to the agreements relied upon by Defendant in its motion. In the Declaration of Defendant's General Manager, Bernard Chris Merceus (the "Merceus Declaration"), Defendant asserts that only William Lovelace executed these agreements and makes no claim regarding Octavia Lovelace.[3] "It goes without saying that a contract

---

[2] Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*
[3] ECF# 26-2.

cannot bind a non-party."[4] Consequently, the claims of Octavia Lovelace, who was

not a signatory to the arbitration clause or to either of the forum-selection clauses,

should not be dismissed on account of those provisions.[5]

## II. Because Plaintiffs have stated a valid claim, the case should not be dismissed under Rule 12(b)(6)

Defendant has brought its motion to dismiss under Fed. R. Civ. P. 12(b)(6). A

"dismissal under Rule 12(b)(6) is a dismissal on the merits of the action — a

determination that the facts alleged in the complaint fail to state a claim upon

which relief can be granted."[6] In deciding a motion to dismiss under Rule 12(b)(6),

the allegations in the complaint are accepted as true, and all reasonable inferences

must be drawn in the plaintiff's favor.[7] The Court's function on a motion to dismiss

is "not to weigh the evidence that might be presented at a trial but merely to

determine whether the complaint itself is legally sufficient."[8] A complaint should

---

[4] *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002).

[5] *See e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003) ("In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause."); *Lafayette Texaco, Inc. v. Smith*, No. 08cv406, 2010 WL 653494, at *4 (M.D. Ala. Feb. 19, 2010) (while judicial economy would favor sending all claims to arbitration, parties to the dispute who had not signed arbitration agreements would not be bound to arbitrate alongside parties who did sign arbitration agreements*); Midwest Fin. Holdings, L.L.C. v. P & C Ins. Sys., Inc.*, No. 07-3156, 2007 WL 4302436, at *3 (C.D. Ill. Dec. 7, 2007) (generally non-signatories are not bound by arbitration clauses signed by other parties); *Universal Underwriters Life Ins. Co. v. Dutton*, 736 So. 2d 564 (Ala. 1999); *First Family Fin. Services, Inc. v. Rogers*, 736 So. 2d 553 (Ala. 1999); *Flores v. Evergreen at San Diego, Inc.*, 55 Cal. Rptr. 3d 823 (Ct. App. 2007) ("Generally, a person who is not a party to an arbitration agreement is not bound by it.").

[6] *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F. 3d 1182, 1187 (2d Cir. 1996).

[7] *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007).

[8] *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985)

not be dismissed if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

Here, Defendant makes no effort to challenge the legal sufficiency of the allegations asserted against it under TILA or NY GBL §§ 349 and 350. Indeed, the Merceus Declaration contains admissions that establish the Defendant's liability under TILA.

Specifically, paragraph 20 of that Declaration provides a breakdown of the "total cash price on delivery to customer" charged to William Lovelace, and it includes a charge of $1,340 as a "dealer financing fee."[11] This dealer financing fee was included in the $33,620 total cash price. This amount, less a $440 DMV registration fee that is separately itemized in the retail installment sales contract, equals the $33,180 "cash price" included in the itemization of the amount financed in the TILA disclosure.[12] Consequently, Defendant has admitted that it included a $1,340 "dealer financing fee" in the amount financed.

Defendant's inclusion of a $1,340 "dealer financing fee" in the amount financed rather than the finance charge is a classic TILA violation. TILA's purpose is to ensure the accurate and meaningful disclosure of the cost of consumer credit

---

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
[11] ECF#26-2 at 8, ¶ 20.
[12] The retail installment contract containing the TILA disclosures was attached to the Merceus Declaration. *See* ECF# 27-3.

and to enable consumers to make informed choices in the credit marketplace. The

U.S. Supreme Court noted in *Mourning v. Family Publication Services, Inc.* that

unscrupulous merchants might attempt to circumvent TILA's objectives by

"'burying' the cost of credit in the price of the goods sold."[13] The Court gave an

example of how a merchant might attempt to avoid the disclosure requirements:

> . . . [T]wo merchants might buy watches at wholesale for
> $20 which normally sell at retail for $40. Both might sell
> immediately to a consumer who agreed to pay $1 per
> week for 52 weeks. In one case, the merchant might claim
> that the price of the watch was $40 and that the
> remaining $12 constituted a charge for extending credit to
> the consumer. From the consumer's point of view, the
> credit charge represents the cost which he must pay for
> the privilege of deferring payment of the debt he has
> incurred. From the creditor's point of view, much
> simplified, the charge may represent the return which he
> might have earned had he been able to invest the
> proceeds from the sale of the watch from the date of the
> sale until the date of payment. The second merchant
> might claim that the price of the watch was $52 and that
> credit was free. The second merchant, like the first, has
> forgone the profits which he might have achieved by
> investing the sale proceeds from the day of the sale on.
> The second merchant may be said to have 'buried' this
> cost in the price of the item sold. By whatever name, the
> $12 differential between the total payments and the price
> at which the merchandise could have been acquired is the
> cost of deferring payment.[14]

The Supreme Court noted that the Federal Reserve Board promulgated regulations

("Reg. Z") in order to prohibit this well-documented practice against a legislative

background acknowledging this concern. Reg. Z addresses the burying of a "finance

---

[13] *Mourning v. Family Publication Services, Inc.*, 411 U.S. 356, 366, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

[14] *Id.* at 366 n. 26.

charge" as part of the "cash price" by its definition of these terms. Cash price is
defined as:

> . . . the price at which a creditor, in the ordinary course of
> business, offers to sell for cash property or service that is
> the subject of the transaction. At the creditor's option, the
> term may include the price of accessories, services related
> to the sale, service contracts and taxes and fees for
> license, title, and registration. The term does not include
> any finance charge.[15]

"Finance charge" is defined broadly in Reg. Z to include both direct and indirect
amounts paid as an incident to or a condition of the extension of credit. Reg Z., §
226.4(a), provides as follows:

> The finance charge is the cost of consumer credit as a
> dollar amount. It includes any charge payable directly or
> indirectly by the consumer and imposed directly or
> indirectly by the creditor as an incident to or a condition
> of the extension of credit. It does not include any charge of
> a type payable in a comparable cash transaction.[16]

The regulatory scheme therefore requires sellers to separate the cash price of goods
sold on credit from charges that are imposed as an incident of the extension of
credit and that are not charged in a comparable cash transaction; those charges
must be disclosed as finance charges.

In this transaction, Defendant advertised the vehicle for a "showroom price" of
$23,981, but because the purchase was financed, it added a "dealer financing fee" of
$1,340 to the cash price without disclosing this fee as a finance charge. This violated

---

[15] 12 C.F.R. § 226.2(a)(9) (2011).
[16] 12 C.F.R. § 226.4(a) (2010).

TILA.[17] Moreover, by advertising the vehicle for one price and selling it for a higher price that included this "dealer financing fee," Defendant has also violated GBL § 349, which prohibits deceptive acts in the conduct of business, and GBL § 350, which prohibits false advertising.

### III.    No party has elected to arbitrate, and dismissal would be improper.

As shown above, the Defendant is not entitled to a dismissal under Rule 12(b)(6), because the facts alleged in Complaint – and the admissions of the Defendant in the Merceus Declaration – assert facts that establish liability under TILA and the GBL. Defendant nevertheless seeks a dismissal because the retail installment sales contract between it and William Lovelace includes an arbitration agreement. However, this arbitration clause does not mandate the arbitration of all disputes. Instead, the agreement provides that either party may *elect* to have claims resolved in arbitration. Specifically, the clause provides: "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY LEGAL DISPUTE DECIDED BY ARBITRATION AND NOT IN A COURT OR BY JURY TRIAL.**"[18] It continues as follows: "any claim or dispute . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, **at your or our election,** be resolved by neutral, binding

---

[17] *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) ("Based on the language of 15 U.S.C. § 1605(a), Regulation Z, and the official staff interpretation, courts have concluded that a creditor is obligated under § 1638(a)(3) to disclose as a finance charge any costs charged to customers buying on credit, but not charged to customers buying with cash, in comparable transactions.").
[18] ECF# 27-3 at 6 of 6 (ECF pagination; emphasis in original).

7

arbitration and not by court action.[19]

Defendant could have elected arbitration by either initiating an arbitration proceeding or by filing a motion under § 3 of the FAA to have this action stayed pending arbitration.[20] It has done neither. Instead, Defendant moved to dismiss the claim or, alternatively, transfer to New York Supreme Court. Absent such an election, the claim is not arbitrable.

## IV. Even if arbitration had been elected, dismissal would be improper, because the Court should stay the proceedings rather than dismiss the action

Even if the Defendant had elected to arbitrate, a dismissal of this action, under Rule 12(b)(6) or otherwise would be inappropriate, because the proper course for a district court to take when a party has elected to arbitrate under a valid arbitration clause is to stay the proceedings, not dismiss the case. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[21]

---

[19] *Id.* (emphasis added).

[20] As shown below, however, the arbitration provision is not enforceable, because the existence of separate agreements for claims to be resolved in court evidence a lack of mutual assent to arbitrate.

[21] 9 U.S.C. § 3 ("Stay of proceedings where issue therein referable to arbitration").

In *Katz v. Cellco Partnership*,[22] the Second Circuit held that a district court should stay proceedings rather than dismiss them if a party elects to enforce an arbitration agreement, holding that "while we recognize the impetus for a rule permitting dismissal, we conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."[23]

It is notable that the Second Circuit's holding provides for a stay of proceedings only when an action has been "referred to arbitration." This is consistent with the language in the FAA, which limits the availability of a stay to situations where "the applicant for the stay is not in default in proceeding with arbitration."[24] In other words, the stay is not available to a party who has not itself sought to arbitrate.

## V. Because the parties have entered into inconsistent dispute-resolution provisions, there has been no mutual assent to arbitrate

Not only has the Defendant not requested a referral to arbitration, but it has also prepared agreements with William Lovelace that explicitly provide that claims are to be resolved in court and not in arbitration. In its Motion to Dismiss, Defendant explicitly references and relies upon provisions in the Vehicle Purchase Agreement and the Customer Acknowledgement form that provides for claims to be

---

[22] *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015).
[23] *Id.* at 347.
[24] 9 U.S.C. § 3.

9

litigated in court and not submitted to arbitration.[25] The Purchase Order provides
that "in the event of litigation same shall be instituted **only in a court of competent
jurisdiction**."[26] The Customer Acknowledgement form similarly provides that "in the
event of litigation same shall be instituted only **in the court** . . . ."[27]

In an analogous case, *NAACP of Camden County East v. Foulke Management
Corp.*,[28] the Appellate Division of the New Jersey Superior Court analyzed and
applied the U.S. Supreme Court decision in *AT&T Mobility v. Concepcion*,[29] and
held that the existence of multiple, conflicting arbitration clauses rendered the
clause unenforceable. The N.J. Appellate Division first observed that *AT&T
Mobility* reaffirmed that courts are free to decline to enforce an arbitration
provision by invoking traditional legal doctrines regarding contract formation,
stating:

> [T]he Court in *AT & T Mobility* acknowledged that the
> FAA does not require an arbitration provision to be
> enforced if the provision is defective for reasons other
> than public policy or unconscionability. Other contract
> principles under state law, such as those governing the
> formation and interpretation of an agreement, may still
> pertain, subject to the overarching objectives of the FAA.
> As the majority noted in footnote six: "Of course States
> remain free to take steps addressing the concerns that
> attend contracts of adhesion—for example, requiring
> class-action-waiver provisions in adhesive arbitration

---

[25] Defendant relies upon these provisions in support of its alternative claim that the
case should be transferred to the New York Supreme Court, addressed below.
[26] Ex. E to Merceus Declaration, ECF# 27-2, ¶ 10 (emphasis added).
[27] Ex. M to Declaration of Bernard Chris Merceus, ECF# 28-4 (emphasis added).
[28] *NAACP of Camden County East v. Foulke Management Corp.*, 421 N.J. Super
404, 24 A.3d 777 (N.J. Super. Ct. App. Div. 2011).
[29] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 1740, 131 S.Ct. 1740, 179 L. Ed.2d
742 (2011)

agreements to be highlighted. Such steps cannot,
however, conflict with the FAA or frustrate its purpose to
ensure that private arbitration agreements are enforced
according to their terms."

This caveat was developed more explicitly in Justice
Thomas's concurring opinion, which represented the
pivotal fifth vote in the Court's five-to-four decision in *AT
& T Mobility*. As Justice Thomas noted, "the FAA requires
that an agreement to arbitrate be enforced unless a party
successfully challenges the formation of the arbitration
agreement, such as by proving fraud or duress." . . .
Justice Thomas further observed that "[c]ontract
formation is based on the consent of the parties, and we
have emphasized that '[a]rbitration under the [FAA] is a
matter of consent.'"

Thus, in the aftermath of AT & T Mobility, state **courts
remain free to decline to enforce an arbitration provision
by invoking traditional legal doctrines governing the
formation of a contract and its interpretation**. Applying
such core principles of contract law here, we must decide
whether there was mutual assent to the arbitration
provisions in the dealership's contract documents. **As part
of that assessment, we must examine whether the terms
of the provisions were stated with sufficient clarity and
consistency to be reasonably understood by the consumer
who is being charged with waiving her right to litigate a
dispute in court**.[30]

The N.J. Appellate Division then applied basic principles of contract formation and

found that there was no mutual assent to arbitrate because there were "multiple

arbitration provisions. . . spread across three different documents," namely a retail

installment contract, a separate arbitration agreement, and an addendum.[31]  The

N.J. Appellate Division noted that the separate agreements were "too plagued with

---

[30] *NAACP*, 421 N.J. Super at 427-28, 24 A.3d at 792 (emphasis added; internal
citations omitted).
[31] *Id.*, 421 N.J. Super at 430, 24 A.3d at 793.

confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning."[32] Specifically, the court noted differences in terms of the arbitration administrator, the qualifications of the arbitrator, the venue for the arbitration, the time by which arbitration must be initiated, the responsibility for the costs of the arbitration, the parties' responsibility to pay fees incurred in moving to dismiss court claims, and other provisions.[33] These inconsistencies led the Court to conclude:

> In sum, the cumulative effect of the many inconsistencies and unclear passages in the arbitration terms within the [Retail Installment Contract], the Addendum, and the [Separate Arbitration Document] compel us to declare them **unenforceable for lack of mutual assent**. We therefore reverse the trial court's contrary legal conclusion of enforceability, and sever the arbitration provisions from the parties' agreement as a whole.[34]

Here, it is even more evident that there was no mutual assent to arbitrate. As in *NAACP,* there are three different dispute resolution provisions contained in three separate documents. In *NAACP,* at least all of the provisions were consistent in providing for claims to be arbitrated. Not so in this case, because two of the dispute resolution provisions provide for adjudications to take place in court and not in arbitration.

---

[32] *Id.,* 421 N.J. Super at 431, 24 A.3d at 794.

[33] *Id.,* 421 N.J. Super at 430-35, 24 A.3d at 794-796.

[34] *Id.,* 421 N.J. Super at 438, 24 A.3d at 798. (emphasis added); *see also Thome v Alexander & Louisa Calder Found.,* 70 A.D.3d 88, 103-104 (1st Dep't 2009)*, lv denied* 15 N.Y.3d 703 (2010) ("For a contract to be created, regardless of whether it is bilateral or unilateral, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms") (internal quotations and citations omitted).

It is noteworthy that the only document providing for arbitration is the retail installment contract, which provides that it has been assigned by Defendant to a third party, Exeter Finance Corp. By contrast, the Purchase Agreement and Customer Acknowledgement do not involve Exeter but are strictly between Defendant and William Lovelace. Those are the agreements that provide for disputes to be resolved in court. The various dispute resolution provisions in this case are "too plagued with confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning."[35] At least in the contract quagmire in *NAACP*, "an especially prudent purchaser who takes the time to read these documents, which are laden with fine print, would likely obtain a generalized sense that a post-sale dispute would be handled through some kind of arbitration."[36] That is not the case here, where two of the three provisions, and the only ones that were not assigned to a third party, provide that disputes will be resolved in court.

Absent a mutual assent to arbitrate, the Defendant could not compel William Lovelace to arbitrate even if it had undertaken to do so.

## VI. *Forum non conveniens* does not apply to claims potentially subject to arbitration

Defendant also seeks dismissal of this action under the *forum non conveniens* doctrine. This doctrine applies to cases where a court has jurisdiction and venue, but dismissal is nevertheless appropriate because:

> the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop

---

[35]*See NAACP,* 421 N.J. Super at 431, 24 A.3d at 794.
[36] *Id.*

13

the litigation in the place where brought and let it start
all over again somewhere else. It is quite naturally
subject to careful limitation for it not only denies the
plaintiff the generally accorded privilege of bringing an
action where he chooses, but makes it possible for him to
lose out completely, through the running of the statute of
limitations in the forum finally deemed appropriate.[37]

Despite its reliance on the *forum non conveniens* doctrine in seeking the dismissal

of this action on account of the arbitration provision, the Defendant cites no

authority for the application of that doctrine to federal actions that are potentially

subject to arbitration. Indeed, as shown above, the FAA provides a mechanism for

parties who have elected to enforce arbitration provisions, and the Second Circuit

has directed that, in appropriate circumstances, district courts should stay

proceedings rather than dismiss them. And, as also shown above, this action should

not be stayed because no party has elected to arbitrate.

### VII. The forum selection clauses relied upon by Defendant are not enforceable, because they are inconsistent, were not reasonably communicated to William Lovelace, and are unreasonable, unjust, and overreaching

Defendant also asks, in the alternative to its motion to dismiss, that the Court

transfer this action to the Supreme Court of New York Count or the Supreme Court

of Queens County under forum-selection clauses contained in the Purchase

Agreement and a Customer Acknowledgement form.

In the first instance, the Defendant cites no authority that would authorize

such a transfer. Federal courts have no authority to "remand" cases filed originally

---

[37] *Norwood v. Kirkpatrick,* 349 U.S. 29, 30, 75 S.Ct. 544, 99 L.Ed. 789 (1955),
*quoting All States Freight v. Modarelli,* 196 F. 2d 1010, 1011 (3d Cir. 1952).

14

in federal court to a state court; remand is appropriate only where a case was

removed from state court.[38] This case was never removed from any state court such

that it could be remanded.[39]

Additionally, it would not be appropriate to dismiss this action on account of

these conflicting forum-selection clauses. In *Philips v. Audio Active, Ltd.,* the

Second Circuit established a four-part analysis to determine whether to dismiss a

claim based on a forum selection clause.[40] First, the court considers whether the

clause was reasonably communicated to the party resisting enforcement.[41] Second,

the court must "classify the clause as mandatory or permissive, i.e., to decide

whether the parties are required to bring any dispute to the designated forum or

simply permitted to do so."[42] Third, the court determines whether the claims are

actually subject to the forum-selection clause.[43]

If the court determines all three those criteria are satisfied, then the clause is

presumptively enforceable, and the court then proceeds to the fourth and final step,

which requires a determination of whether the party resisting enforcement has

rebutted the presumption "by making a sufficiently strong showing that

enforcement would be unreasonable or unjust, or that the clause was invalid for

---

[38] *See* 28 U.S.C. § 1441, *et seq.*
[39] *Giusti v. Morgan Stanley Smith Barney, LLC*, 581 Fed.Appx. 34 (2d Cir. 2014) (summary order), *citing McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 429 (3d Cir. 1983) (finding that neither 28 U.S.C. § 1631 nor § 1447 gave a district court authority to transfer a case originally filed in that district court to any state court).
[40] *See Phillips v. Audio Active, Ltd.,* 494 F. 3d 378, 383 (2d Cir. 2007).
[41] *Id.*
[42] *Id.*
[43] *Id.*

such reasons as fraud or overreaching."[44]

Here, dismissal is not appropriate because the forum selection clause was not reasonably communicated. Courts consider a forum-selection clause to be reasonably communicated to a party resisting enforcement, "if it is phrased in clear and unambiguous language."[45] The forum-selection provision is anything but clear, as evidenced by the fact that the Defendant cannot specify which forum was selected. Defendant asks for a transfer to either the New York Supreme Court in Queens or the New York Supreme Court in Manhattan without specifying which would be appropriate or why. Defendant's indecision is understandable, because there are two different, conflicting forum-selection clauses, one of which is internally inconsistent and ambiguous.

The Vehicle Purchase Agreement provides that "litigation shall be instituted only in a court of competent jurisdiction in the State and County of New York at the place where the [Defendant] . . . has its main office."[46] The clause therefore directs the filing of suit in New York County, which is coextensive with the Borough of Manhattan. (Plaintiffs note that the U.S. District Court for the Southern District of New York is a court of competent jurisdiction located in New York County.

---

[44] *Id.* (internal quotation marks omitted); *see also Martinez v. Bloomberg LP,* 883 F. Supp. 2d 511, 516 (S.D.N.Y. 2012); *Lopez v. Lando Resorts Corp.* No. 14-CV-1609, 2015 WL 3473894 (D. Conn. June 2, 2015).

[45] *Magi XXI, Inc. v. Stato Della Del Vaticano*, 818 F. Supp.2d 597, 605 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013); *Saye v. First Specialty Ins. Co.*, No. 14-CV-5946, 2015 WL 1737949, at *4 (E.D.N.Y. Apr. 16, 2015) ("the forum-selection clause was clearly stated in the [contract] and was thus reasonably communicated").

[46] ECF# 27-2, ¶ 10.

Plaintiffs have no objection to the transfer of this matter to that forum.)[47] But the clause also directs that suit be brought at the place where the Defendant has its main office, which, as stated in paragraph 13 of the Declaration of Bernard Chris Merceus, is Long Island City, which is located in Queens County. This clause is internally inconsistent.

Further muddying the forum designation is the conflicting designation contained in the Customer Acknowledgement Form, attached to the Merceus Declaration as Exhibit M. That agreement provides:

> In reference to Retail Buyer's [sic], as per these terms this agreement shall be interpet [sic] under and governed by the state of New York and in the event of litigation same shall be instituted only in the court at 89-17 Sutphin Blvd, Jamaica New York, at the place where Dealer has its main office and the defendant shall waive lack of jurisdiction of such court as a defense.[48]

In addition to being poorly worded and difficult to understand, this agreement requires that litigation be initiated at a courthouse located at a specific address. Although the Defendant implies in its memorandum that this is the address for the Supreme Court in Queens County, that is a misleading implication. The address of the designated court – **89-17** Sutphin Boulevard – is Queens County **Civil Court**.

---

[47] *See Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 914-15 (E.D.N.Y. 1994) (proper procedure for enforcing forum-selection clause is through motion to transfer venue, if forum-selection clause permits suit to be brought in federal court); *see also*, *Carrano v. Harborside Healthcare Corp.*, 199 F.R.D. 459, 462 (D. Conn. 2001) (holding that the clause "litigation . . . shall be brought in Pinellas county" could mean state or federal court in Pinellas County); *BRM Indus., Inc. v. Mazak Corp.*, 42 F.Supp.2d 176, 179 (D. Conn. 1999) ("As the Second Circuit has clarified, Section 1404(a) analysis applies where the forum selection clause allows the court to transfer the case to another federal court.")
[48] ECF# 28-4.

This provision therefore conflicts with the forum-selection clause in the Purchase Agreement, which provides that suit can be filed in any "court of competent jurisdiction" and does not limit litigation to the Civil Court, where claims are jurisdictionally limited to $25,000.[49]

The Defendant's contract documents are contradictory, and they are so confusing that the Defendant could not identify which court had been designated. The Purchase Agreement states that suit can be brought in any court of competent jurisdiction, but it provides conflicting information regarding the county in which the action must be brought. The Customer Acknowledgement form may provide clarity regarding the courthouse to which claims are to be brought, but it contradicts the Purchase Agreement by limiting claims to Civil Court.[50] And all of these clauses contradict the Truth in Lending Act, which provides that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ."[51]

Given the failure of the contract documents to clearly articulate where suit

---

[49] *See* New York City Civil Court Act § 202 ("The court shall have jurisdiction of actions and proceedings for the recovery of money, actions and proceedings for the recovery of chattels and actions and proceedings for the foreclosure of liens on personal property where the amount sought to be recovered or the value of the property does not exceed $25,000.")

[50] Even further complicating the forum selection issue is the existence of the arbitration clause, which provides yet a third forum for claim dispute resolution. As discussed above, the existence of these separate and contradictory clauses provide ample reason to disregard all of them, because there was no mutual assent as to any specific forum for the resolution of conflicts.

[51] 15 U.S.C. § 1640(e).

18

must be brought, it can hardly be said that this ambiguous forum selection clause was "reasonably communicated" to William Lovelace as required by *Philips*.

Moreover, the limitations in the Customer Acknowledgement clause give rise to additional objections regarding the adequacy of the communication. As noted above, this clause is awkwardly worded and unclear in meaning. More importantly, although it specifies that claims are to be brought to a court in a specific address, the provision does not disclose that this is the address for the Civil Court. Even more importantly, the provision does not disclose the jurisdictional limitation of that court is limited to $25,000.

This clause surreptitiously caps claims at $25,000 and obscures the limitation by not adequately communicating either the identity of the court or the limitations of its jurisdiction.

This cap is important to this case, because Plaintiffs sought a recovery of approximately $30,000 in their motion for judgment. They could not obtain complete relief in the designated forum. Consequently, even if the designation of the Civil Court in Queens County had been reasonably communicated to William Lovelace, making it presumptively enforceable,[52] this jurisdictional cap on damages is unreasonable, unjust, and overreaching and is therefore invalid under the fourth step in *Philips*.[53]

---

[52] William Lovelace concedes that both clauses are mandatory and would apply to his claims.

[53] *See Taub v. World Financial Network Bank*, 950 F.Supp. 2d 698, 703 (S.D.N.Y. 2013) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)) (any pre-dispute waiver of a TILA claim is unenforceable

19

Defendant appears to recognize this problem by asking the Court to transfer the case to the Supreme Court, which does not have a jurisdictional limitation on damages, rather than the Civil Court designated in the Customer Acknowledgement.

It is almost beyond reasonable debate that a forum-selection clause that relegates claims to a court that does not have jurisdiction for the full value of the claim is unreasonable, unjust, and overreaching, and for that additional reason, this action should not be dismissed under the *forum non conveniens* doctrine.

## Conclusion

For the foregoing reasons, the motion to dismiss should be denied.

Dated:      March 22, 2017

> PLAINTIFFS,
> WILLIAM J. LOVELACE
> and OCTAVIA LOVELACE
>
> By: /s/ *Brian L. Bromberg*
> ⠀⠀⠀⠀Brian L. Bromberg
> ⠀⠀⠀⠀One of Plaintiffs' Attorneys
>
> ⠀⠀⠀⠀Daniel S. Blinn
> ⠀⠀⠀⠀One of Plaintiffs' Attorneys

---

because a private right that affects the public interest may not be waived or released if doing so would be contrary to the purpose of the statute); *see also*, *Abercrombie v. Wells Fargo Bank*, 417 F.Supp.2d 1006 (N.D. Ill. 2006) (contract clause requiring consumer to give creditor the opportunity to correct any violations is invalid; it would gut TILA because a consumer who received corrected disclosures after having signed the contract would be unable to use them to shop for credit); *Schwartz v. Comenity Capital Bank*, No. 13-Civ-4896, 2015 WL 410321, at *11-12 (S.D.N.Y. Feb. 2, 2015) (same).

## Certificate of Service

I, Brian L. Bromberg, an attorney, hereby certify that on March 22, 2017, the foregoing documents were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Ira B. Pollack, Esq.

Daniel S. Blinn, Esq.

Dated:      New York, New York
              March 22, 2017

                        /s/ Brian L. Bromberg
                        Brian L. Bromberg